OPINION.
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Salvatore Taravella, appeals the decision of the Harrison County Court of Common Pleas which convicted him of two counts of aggravated murder and one count of aggravated burglary and sentenced him accordingly. On appeal, Taravella argues the trial court committed plain error when it failed to instruct the jury on the offense of voluntary manslaughter, that his trial counsel was ineffective, that the trial court committed reversible error by not granting his motion for a change of venue, and that his conviction for aggravated burglary is against the manifest weight of the evidence
 {¶ 2} Taravella cannot demonstrate that he acted under a sudden fit of passion or rage when he killed the victim since the evidence demonstrates he was not seriously provoked and, moreover, had a sufficient cooling off period between the alleged provocation and the killing. Accordingly, the trial court did not err when it did not instruct the jury on voluntary manslaughter. Secondly, Taravella is unable to demonstrate that counsel was ineffective in any way. Third, the trial court did not abuse its discretion when it failed to grant Taravella's motion for a change of venue since each juror stated that the pre-trial publicity would not affect their ability to be fair and impartial. Finally, the evidence clearly supports Taravella's conviction for aggravated burglary. Since each of Taravella's arguments are meritless, the decision of the trial court is affirmed.
 Facts {¶ 3} Taravella was living with Maxine Luyster in her home in Cadiz, Ohio. One morning, Taravella and Luyster had a disagreement and Taravella threatened Luyster's life. Luyster contacted the police to have Taravella removed from her home. A police officer arrived at the scene and ordered Taravella to pack his belongings in his van. Taravella complied with that request and was very cooperative. While Taravella was packing the van, Luyster told the officer that Taravella kept a gun in a dresser drawer. The officer and Luyster looked for the gun and could not find it. The officer then asked Taravella about the gun and Taravella told him it was in a camper in Wintersville. No gun was visible and the officer did not pat Taravella down. The officer then followed Taravella as Taravella drove from Luyster's home until he arrived at a bank. Then the officer responded to another call.
 {¶ 4} After leaving the bank, Taravella returned to Luyster's home. He parked his van down the road and walked up to her house, making sure she couldn't see him. He testified that he wanted to talk to her to see if she would let him live in her home again since he had no place else to go. But he knew that if she saw him approaching that she would lock the doors to keep him out. Luyster's neighbors saw Taravella approach the house, look around corners and peek in a window, and enter the back door. Very soon thereafter, Taravella left through the door and put something in his pocket. He returned to his van and drove away.
 {¶ 5} About the time that Taravella entered the home, Luyster was on the phone with a friend of hers. The friend heard that someone was at the door, heard Luyster say, "Oh, it's you," and gunshots. She then called the police. Police officers responded to the scene and found Luyster shot to death in her kitchen.
 {¶ 6} After leaving Luyster's house, Taravella visited a friend of his. He told that friend, "I shot her. I hope I killed her. I hope she's dead." He then used his friend's phone to call his brother. His sister-in-law answered the phone and Taravella told her that he shot Luyster. He then gave a gun to his friend for safekeeping and left. His friend subsequently turned the gun over to the police. Taravella was picked up and arrested by the police shortly after he left his friend's house. He was charged with Luyster's murder and aggravated burglary.
 {¶ 7} Taravella pleaded not guilty by reason of insanity to the charges against him and the trial court ordered an examination both of Taravella's competency and his sanity. At a competency hearing, the State produced Taravella's evaluation which found him both sane and competent, but the judge continued the hearing so Taravella could obtain an independent evaluation. The trial court never held another hearing on Taravella's competency and never entered a judgment finding him either competent or incompetent.
 {¶ 8} Taravella also moved for a change of venue. The trial court took the matter under advisement pending the voir dire of the jury. After voir dire, the trial court did not specifically overrule the motion, but did not grant a change of venue.
 {¶ 9} At the conclusion of Taravella's jury trial, he was found guilty on two counts of aggravated murder and one count of aggravated burglary with a firearm specification. The trial court sentenced Taravella to twenty years to life on each count of aggravated murder and ordered that those terms be run concurrently. It also sentenced him to ten years for the aggravated burglary and ordered that term be run consecutive to counts one and two. Finally, the trial court sentenced Taravella to a term of one year for the firearm specification and ordered that term be served before any other term.
 Failure to Instruct on Voluntary Manslaughter {¶ 10} Taravella's appellate counsel argues one assignment of error on appeal as follows:
 {¶ 11} "The trial court committed plain error by failing to instruct the jury on the inferior charge of voluntary manslaughter."
 {¶ 12} According to Taravella, the jury could have found him not guilty of aggravated murder, but guilty of voluntary manslaughter because he went "haywire" when he shot Luyster. The State argues the evidence does not support a conclusion either that a reasonable person would be provoked or that Taravella was provoked. In addition, it argues that a reasonable man would have cooled off in the time between the provocation and the shooting.
 {¶ 13} Taravella did not object to the trial court's failure to instruct the jury on voluntary manslaughter. A defendant waives all but plain error when he fails to object to a jury instruction before the jury retires in accordance with Crim.R. 30(A). State v. Williford (1990),49 Ohio St.3d 247, 251. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). This rule places three limitations on this court's ability to recognize plain error: 1) there must be a deviation from a legal rule; 2) the error must be an obvious defect in the trial proceedings; and, 3) the error must have affected the outcome of the trial. State v. Barnes (2002), 94 Ohio St.3d 21, 27. Even if an error is plain, this court is not obligated to correct that error as the decision to correct plain error is discretionary. Id. Thus, plain error only needs to be corrected "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 14} Taravella correctly argues that voluntary manslaughter is an offense of inferior degree of aggravated murder. State v. Rhodes
(1992), 63 Ohio St.3d 613, 617-618. Aggravated murder is defined as purposefully causing the death of another with prior calculation and design. R.C. 2903.02(A). In contrast, a person commits voluntary manslaughter when, while either under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, knowingly causes the death of another. R.C. 2903.03(A).
 {¶ 15} An instruction on an inferior degree offense must be given if, under any reasonable view of the evidence, it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser or inferior offense. Id. Under this test, the trial court may give an instruction on voluntary manslaughter when a defendant is being tried for murder if the evidence, when construed most favorably to the defendant, would allow the jury to reasonably find the defendant established, by a preponderance of the evidence, he acted under the influence of sudden passion or in a fit of rage brought on by serious provocation by the victim that is reasonably sufficient to incite the use of deadly force. Rhodes at syllabus. So to warrant a jury instruction on voluntary manslaughter, the jury must be able to find by a preponderance of the evidence that the provocation was sufficient to arouse the passions of an ordinary person and it so provoked this particular defendant. State v. Mack (1998), 82 Ohio St.3d 198, 201; State v. Shane
(1992), 63 Ohio St.3d 630, 634. Past incidents do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off. Id.
 {¶ 16} Taravella argues the following facts would be sufficient to support a conviction on the offense of voluntary manslaughter. He was an 81 year-old man without anyplace to go and a history of mental problems when Luyster called the police and had him removed from the residence. According to Taravella, this was a "complete surprise." He then argues he went back to the home to attempt to reconcile with Maxine and when he could not he "went haywire."
 {¶ 17} Taravella's argument ignores the fact that in order to be convicted of voluntary manslaughter, the jury must be able to find that the victim's actions would seriously provoke the reasonable person into a sudden fit of rage or passion. There are situations which classically fit into a voluntary manslaughter situation, such as assault and battery, mutual combat, illegal arrest, and discovering a spouse in the act of adultery. Shane at 365. But a jury instruction on voluntary manslaughter is not always required, even in these classic situations. State v.Cornett (1992), 82 Ohio App.3d 624, 633. In this case, we cannot conclude that Luyster's actions, having Taravella removed from her home, were similar to these classic situations.
 {¶ 18} But even if Luyster's actions would be sufficient to provoke a reasonable person, the evidence demonstrates that Taravella was not so provoked. The police officer who ordered Taravella out of the house was present for approximately an hour while Taravella packed his things. He stated that Taravella was "very cooperative" when he was moving out. Taravella himself testified he was not mad at Luyster for kicking him out of the house. He stated that, "[t]t just made me feel bad, that's all." The only evidence Taravella can point to to show he was provoked was the fact that he shot Luyster and his statement that he "went haywire" when he entered the house. Finally, the facts demonstrate that Taravella had ample time to cool off before he killed Luyster. The police officer was at the house with the two of them for about an hour as Taravella packed his van. After he left the home, Taravella returned about twenty minutes later. So Taravella did not shoot Luyster until approximately an hour and twenty minutes after she allegedly provoked him. Clearly, he did not act under a sudden fit of rage or passion at that time.
 {¶ 19} Because Taravella cannot point to facts which support his claim that he was reasonably acting under a sudden fit of rage or passion when he shot Luyster, the trial court did not commit plain error when it did not instruct the jury on voluntary manslaughter. Taravella's first assignment of error is meritless.
 Ineffective Assistance of Counsel {¶ 20} Taravella's remaining assignments of error are all argued pro se. In his first of three pro se assignments of error, he contends:
 {¶ 21} "Defendant-Appellant was deprived the effective assistance of counsel as guaranteed by the 6th and 14th Amendments of the Unites States Constitution and Article I, Section 10."
 {¶ 22} Taravella argues counsel was ineffective for four basic reasons. He argues that counsel should have requested a voluntary manslaughter jury instruction, established that he was either incompetent or insane, made certain evidentiary objections, and obtained a hearing aid for Taravella's use at trial.
 {¶ 23} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. Statev. Smith (1985), 17 Ohio St.3d 98, 100. In order for a court to conclude counsel was ineffective, the defendant must overcome the strong presumption that, under the circumstances, the allegedly ineffective action might be considered sound trial strategy. Strickland at 698; Statev. Sallie (1998), 81 Ohio St.3d 673, 674.
 {¶ 24} Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. State v. Hamblin (1988),37 Ohio St.3d 153. The defendant must demonstrate more than vague speculations of prejudice to show counsel was ineffective. State v. Otte
(1996), 74 Ohio St.3d 555, 565. To establish prejudice, a defendant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland at 694. A reasonable possibility must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith at 100.
 {¶ 25} In his first argument in support of this assignment of error, Taravella's claims counsel was ineffective for failing to request a voluntary manslaughter instruction. As discussed above, the evidence did not warrant a voluntary manslaughter instruction. Accordingly, counsel was not ineffective for failing to request this instruction.
 {¶ 26} Taravella next argues trial counsel was ineffective for failing to establish that Taravella was suffering from some sort of mental deficiency for the purposes of both competency and Taravella's insanity defense. Taravella pleaded guilty by reason of insanity and argues the evidence at trial demonstrated that he has some sort of mental health history dating to before World War II. Taravella seems to argue that the evidence on the record demonstrates that counsel was ineffective for failing to ensure that he had a full competency hearing prior to trial. In addition, he argues counsel was obviously ineffective for attempting a "Traumatic Amnesia Theory" without having an expert witness testify on his behalf or offering medical reports demonstrating his mental defects. Taravella also seems to argue that counsel was ineffective for having Taravella testify when counsel thought that Taravella was incompetent.
 {¶ 27} The fundamental problem with all of Taravella's arguments in this portion of his assignment of error is that he cannot demonstrate a reasonable probability that but for counsel's error the outcome of his case would have been different. For instance, the record demonstrates that the doctor which performed Taravella's original court-ordered evaluation found him competent to stand trial. But it does not contain any other evidence demonstrating that Taravella was incompetent. Certainly, the fact that Taravella cogently argues three assignments of error in his pro se brief indicates his competency.
 {¶ 28} "The term `mental illness' does not necessarily equate with the definition of legal incompetency." State v. Berry (1995),72 Ohio St.3d 354, syllabus. A defendant is competent if the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States (1960), 362 U.S. 402. "A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel."State v. Bock (1986), 28 Ohio St.3d 108, 110.
 {¶ 29} Although Taravella argues that he had a history of mental problems dating back to before World War II, when explaining this medical history he testified that he was hit in the head as a small child and was discharged from the army because he "would always pass out." He also testified that he was treated and medicated for depression in 1997. But these facts alone are not evidence that he was incompetent to assist in his defense. See State v. Borchers (1984), 101 Ohio App.3d 157 (Fact that defendant was on a prescription for depression does not indicate incompetence); State v. Mann (June 21, 1999), 12th Dist. No. CA98-08-066 (Antidepressants did not affect defendant's ability to make a knowing, intelligent, and voluntary plea). Without some evidence of incompetency, this court cannot judge whether counsel was ineffective for failing to further investigate and argue Taravella's incompetency.
 {¶ 30} Similarly, it is impossible to judge whether counsel was ineffective for failing to have an expert testify on Taravella's behalf or introduce Taravella's medical records. This court cannot tell at this time what that expert would have said and what those medical reports may have contained. In addition, Taravella's implicit criticism of the trial court's strategy is inappropriate in an ineffective assistance of counsel argument since appellate courts will ordinarily refrain from second-guessing counsel's strategic decisions, even when that strategy is questionable. State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 152.
 {¶ 31} Taravella's argument regarding counsel's alleged ineffectiveness for having him testify at trial is another attempt to second-guess trial counsel's decisions. The decision whether to call a defendant as a witness falls within the purview of trial tactics and, therefore, is not subject to second-guessing by an appellate court. Statev. Adkins (2001), 144 Ohio App.3d 633, 646; State v. Landolfi (Nov. 23, 1999), 7th Dist. No. 97-CA-243. In addition, a defendant's right to testify is a personal right and there is no evidence in the record that defendant did not wish to take the witness stand or whether defendant took the witness stand against the advice of counsel. See State v. Bey
(1999), 85 Ohio St.3d 487; State v. Coulson (Aug. 2, 1996), 3rd Dist. No. 6-96-04. Thus, Taravella's arguments relating to counsel's alleged ineffectiveness regarding Taravella's competency are meritless.
 {¶ 32} It should be noted that in this portion of his argument Taravella argues that the trial court denied him due process by not holding a competency hearing after his competency was placed into question. But this argument has nothing to do with counsel's ineffectiveness and Taravella has not assigned this alleged error as a separate assignment of error. Accordingly we will disregard this argument. See App.R. 12(A)(2); App.R. 16(A)(7).
 {¶ 33} Taravella's next argues that counsel's failure to make certain evidentiary objections was ineffective. But he does not even attempt to argue how he was prejudiced by counsel's failure to object to the manner in which evidence was introduced. For instance, he argues the State did not completely prove the chain of custody. But this argument ignores the fact that a broken chain of custody goes to the weight, not the admissibility, of the evidence so that evidence would be before the jury anyway. See State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 43. Likewise, he argues about the manner in which his police interviews were read into evidence. But this argument ignores the fact that the substance of these interviews were admissible and would ultimately have been admitted even if counsel objected to the manner of their admission. Accordingly, these arguments are meritless.
 {¶ 34} Finally, Taravella argues counsel was ineffective for failing to ensure that Taravella had a hearing aid during the trial. Before trial, Taravella's counsel moved for permission to get Taravella a hearing aid at his own expense and that motion was granted. Taravella now argues counsel was ineffective for failing to secure a hearing aid. Because it is impossible to tell from the record whether this is the truth, this argument is more appropriate for post-conviction relief.
 {¶ 35} Because Taravella has failed to demonstrate counsel's ineffectiveness on appeal, this assignment of error is meritless.
 Change of Venue {¶ 36} Taravella's second pro se assignment of error argues:
 {¶ 37} "The trial court erred in failing to grant the motion for change of venue and failing to address said request until jury was already picked."
 {¶ 38} Taravella moved for a change of venue before trial and the trial court took the matter under advisement pending the voir dire of the prospective jurors. According to Taravella, a review of the voir dire demonstrates that nearly all the potential jurors knew the victim and held her in high regards and had formed opinions based on the overwhelming pretrial publicity. And he argues that tainting of the jury pool with these potential jurors "could have had a biased and prejudicial effect" on the jurors actually selected to be in the panel.
 {¶ 39} A party may move for a change of venue under Crim.R. 18(B) "when it appears that a fair and impartial trial cannot be held in the court in which the action is pending." Changes in venue help protect fair trial rights and the crucial issue when reviewing a trial court's refusal to change venue is whether that decision violated those rights. State v.Coley (2001), 93 Ohio St.3d 253, 258; State v. Lundgren (1995),73 Ohio St.3d 474, 479.
 {¶ 40} But any decision regarding a change of venue rests in the sound discretion of the trial court and a court of appeals will only reverse its decision if it clearly abuses that discretion. Id.; State v.Pearson (1998), 130 Ohio App.3d 577, 585. A defendant claiming that pretrial publicity has denied him a fair trial must usually show that one or more jurors were actually biased. State v. Treesh (2001),90 Ohio St.3d 460, 463. Prejudice will only be presumed in rare cases where the pretrial publicity is sufficiently prejudicial and inflammatory and saturated the community where the trials were held. State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126 ¶ 86; Treesh at 463.
 {¶ 41} A trial court is not required to grant a motion for a change of venue merely because of extensive pretrial publicity. Treesh at 463. This is because the trial court is in the best position to judge whether the publicity has affected defendant's right to a fair trial.State v. Maurer (1984), 15 Ohio St.3d 239, 250-251, 15 OBR 379, 388-390,473 N.E.2d 768, 780-781. "`[A] careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality.'" State v.Landrum (1990), 53 Ohio St.3d 107, 117, quoting State v. Bayless (1976),48 Ohio St.2d 73, 98. "[T]he interests of judicial economy, convenience, and reduction of public expenses necessitate that judges make a good faith effort to seat a jury before granting a change in venue." State v.Fox (1994), 69 Ohio St.3d 183, 189. Accordingly, even pervasive, adverse pretrial publicity does not necessarily require a change of venue if the trial court can empanel an impartial jury. Lundgren at 479. "Indifference does not require ignorance." Id.
 {¶ 42} In his argument in support of this assignment of error, Taravella does not allege that any of the seated jurors displayed any impartiality. Instead, he references statements made by potential jurors. This is basically the same argument the defendant presented inState v. Riddle (Dec. 18, 2001), 7th Dist. Nos. 99 CA 147, 99 CA 178, and 99 CA 204, at 11. We rejected that argument since the defendant failed to show that one or more of the jurors was actually biased. Id.
 {¶ 43} Both the prosecution and defense counsel in this case extensively asked each prospective juror about their exposure to the publicity in this case; their knowledge of the defendant, victim, and witnesses; and their ability to make judgments independent of the information they previously heard. Although some of the jurors admitted they had heard about the incident at the time it happened, they each stated that publicity would not affect their ability to be fair and impartial. Without more, we cannot say the trial court clearly abused its discretion when it denied Taravella's motion to change venue. Accordingly, Taravella's second pro se assignment of error is meritless.
 Manifest Weight of the Evidence {¶ 44} In his third and final pro se assignment of error, Taravella argues:
 {¶ 45} "Appellant was deprived without due process of law by his conviction for aggravated burglary which was not supported by the manifest weight of evidence."
 {¶ 46} According to Taravella, the evidence "clearly establishes" that he did not enter Luyster's residence by "force, threat, or deception". Thus, he contends he could not be found guilty of aggravated burglary.
 {¶ 47} When reviewing whether a conviction was against the manifest weight of the evidence, this court must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v. Tibbetts
(2001), 92 Ohio St.3d 146, 163, quoting State v. Getsy (1998),84 Ohio St.3d 180, 193. In order to do this, it must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducingbelief.'" (Emphasis sic.) State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. "To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus.
 {¶ 48} Taravella was convicted of aggravated burglary in violation of R.C. 2911.11(A)(2). That section provides as follows:
 {¶ 49} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." Id.
 {¶ 50} Taravella's argument that his conviction for aggravated burglary is against the manifest weight of the evidence is simply wrong. He testified that he parked his car down the road because, "If she'd seen my car she'd lock the doors and I couldn't talk to her", and he knew she didn't want him in the house. He admitted peeking into the kitchen window before entering the home to make sure she didn't see him because, "She'd lock the door if she'd seen me." Luyster's neighbors testified they saw Taravella walk around the back of the house, and look around a corner a couple of times before entering the back door. When he went into the house, he shot Luyster with his gun. The neighbor testified she saw him come back out of the house soon after he went in.
 {¶ 51} Clearly, these facts meet all the elements of aggravated burglary. He used stealth to enter the house because he knew that Luyster did not want him there and that she would lock the doors if she knew he was coming. Luyster was present when he entered the house. He entered the structure to commit a criminal offense, the murder of Luyster. And he had a firearm on his person when he committed the offense. Given these facts, Taravella's argument that his conviction for aggravated burglary is against the manifest weight of the evidence is meritless.
 {¶ 52} Accordingly, Taravella's assignments of error are meritless and the judgment of the trial court is affirmed.
Judgment affirmed.
Donofrio and Vukovich, JJ., concur.