[Cite as *State v. Banks*, 2019-Ohio-980.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee          :

                                No. 107048

    v.                                      :

EARL BANKS,                             :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-14-582703-B, CR-14-582808-A, and CR-14-583146-A

---

### *Appearances:*

Brian R. McGraw, *for appellant.*

Michael C. O'Malley, Prosecuting Attorney, and Shannon
M. Raley, Assistant Prosecuting Attorney, *for appellee.*

LARRY A. JONES, SR., J.:

{¶ 1}  In this appeal, defendant-appellant Earl Banks challenges his 9½-year sentence that was imposed after his original conviction and 19-year sentence were reversed.  For the reasons that follow, we affirm.

## I. Procedural and Factual History

{¶ 2} In 2014, Banks was charged with numerous crimes in four separate cases. He pleaded no contest in one of the cases and the trial court found him guilty of a sole count of escape. *See* Cuyahoga C.P. No. CR-14-581555-A. The other three cases proceeded to a jury trial; the charges in those case consisted of kidnapping, aggravated robbery, felonious assault, having weapons while under disability, burglary, aggravated menacing, vandalism, and grand theft.[1] Many of the charges contained one- and three-year firearm and repeat violent offender specifications, as well as notices of prior conviction. The facts surrounding the charges were as follows.

{¶ 3} In one incident, Banks kicked in the front door to a home, entered the house, and kicked in another door to a room where the victim was hiding. Banks asked the victim where "Amy was"; he was apparently referring to Amy Sutton, his codefendant. The victim said she did not know and Banks left.

{¶ 4} In another incident, Sutton, Bank's codefendant, had placed an online advertisement to be an escort. At the time, she and Banks were dating and residing together, along with another man, in the man's house. The victim contacted Sutton and the two made arrangements for a sexual encounter at the home where Sutton and Banks were living, and for which the victim was to pay Sutton $100.

---

1
 *See* Cuyahoga C.P. Nos. CR-14-582703-B, CR-14-582808-A, and CR-14-583146-A.

{¶ 5} The victim arrived at the house and Sutton took him into a bedroom. The victim testified that he put $100 on the dresser and began to undress. When the victim was completely undressed, Sutton started to undress. While Sutton was disrobing, the victim heard a "kick" from outside the room. The doorjamb then cracked and Banks entered the room. The victim reached for his gun, and he and Banks got in a struggle over the gun. The struggle continued out of the bedroom and the two ended up in the kitchen, still struggling.

{¶ 6} Meanwhile, the homeowner, who had been sleeping, woke up when he heard the commotion. He found Banks and the nude victim wrestling on the kitchen floor. Banks instructed the homeowner to hit the victim, and the homeowner complied, hitting the victim over the head with a chair. According to the homeowner, the gun discharged during the struggle and the victim was shot in his thigh. The victim testified, however, that Banks got control of the gun and shot him twice from a distance of ten feet and then pistol whipped him.

{¶ 7} The homeowner pushed the victim out of the house, and ordered Sutton to give him his car keys. Sutton threw the victim's car keys outside and left the house. Banks also left; he still had the victim's gun. The victim flagged down a passing police car and initially told the officer that he had been shot and robbed at a gas station. He later told the officer where the incident had actually occurred.

{¶ 8} The police responded to the house where the incident occurred, and upon the homeowner's insistence, Sutton returned to the house to speak with the police. Sutton told the police that she met the victim online and they agreed that he

would pay her $100 for "adult dances and talk." According to Sutton, when the victim arrived he took his clothes off, but did not have the money, and instead tried to rape and rob her at gunpoint. Sutton told the police that her boyfriend "Dwayne Wilson" entered the room and "Dwayne Wilson" and the victim got into an altercation. She told the police she did not see the gun go off.

{¶ 9} Sutton was also interviewed at the police station. She initially told the police that she had invited her boyfriend "Dwayne Wilson" to spend the night, and when he arrived he found the victim trying to rape her at gunpoint. Shortly after Sutton's interview at the station, the police arrested Banks in a stolen vehicle tied to another incident that will be described below. Sutton arrived on the scene. Sutton was interviewed again, and this time she admitted that "Dwayne Wilson" was Banks and that Banks was the person involved in the victim's shooting.

{¶ 10} In another incident, as alluded to above, yet another victim had his mother's car stolen by Banks. In that incident, the victim, Banks, and Sutton were at the victim's grandmother's house; the victim was helping his grandmother get the house ready to rent. Sutton and Banks expressed an interest in renting the home, so the victim allowed the two to spend the night at the house. He left the keys to his mother's car on a TV stand.

{¶ 11} When the victim woke up the next morning, the keys, car, Sutton, and Banks were gone. He called and texted Sutton who "strung him along," promising that the car would be returned. The victim admitted that he had previously allowed Sutton and Banks to use his mother's car in exchange for drugs, but maintained that

that was not the case this time. When Sutton and Banks did not return the car, the victim reported it stolen. The police located Banks in the vehicle and apprehended him.

{¶ 12} The last incident consisted of Banks kicking in the apartment door of a friend he had met in prison and stealing the friend's guitar. The friend picked Banks out in a photo lineup.

{¶ 13} On this evidence, the jury found Banks guilty of numerous crimes, including many repeat violent offender specifications. The trial court sentenced him to an aggregate prison term of 19 years; the sentence did not include consecutive terms except for the mandatory consecutive terms for the firearm and repeat violent offender specifications. Banks appealed, and one of his challenges was that the trial court erred by having the jury, instead of the court, determine the repeat violent offender specifications. This court agreed and reversed the convictions (with the exception of the escape conviction) and remanded the case to the trial court for a new trial. *State v. Banks*, 8th Dist. Cuyahoga Nos. 102360, 102361, 102362, and 102363, 2015-Ohio-5413.

{¶ 14} On remand, Banks entered into a plea agreement with the state of Ohio. The plea was to fewer crimes than the jury had originally found him guilty of. As part of the agreement, the parties recommended an agreed six-year prison sentence to the trial court. The court did not follow the parties' recommendation, however; it imposed a prison sentence of nine-and-one-half years that included consecutive terms.

{¶ 15} Banks now appeals and raises the following two assignments of error for our review:

I. The trial court erred by failing to properly explain the time involved in appellant's sentence.

II. The trial court, without new justification, imposed consecutive time in a case where it did not impose consecutive time in the original sentence.

## II. Law and Analysis

{¶ 16} In his first assignment of error, Banks contends that his sentence should be modified because the trial court failed to properly explain to him the length of his sentence. We disagree.

{¶ 17} At the conclusion of the sentencing hearing, Banks asked the trial court what the total length of his sentence was. The trial court responded, "I think it is somewhere around seven years, minus the three you have already done. * * * But don't hold me to it. I haven't done that math. I did it before but I forgot it already." The trial court told Banks that he would get credit for the time he already served, and that his attorney would be able to help him figure out exactly how much time he was sentenced to.

{¶ 18} Upon review, the court stated a sentence on the record that totaled nine-and- one-half years; the judgment entry of conviction also set forth a nine-and- one- half year sentence. Thus, despite the trial court's miscalculation, which it told Banks not to hold it to, the record and entry reflect a nine-and-one-half year sentence.

{¶ 19} In *State v. Caldero*, 8th Dist. Cuyahoga No. 102523, 2015-Ohio-4498, this court held that a "mere calculation mistake" did not require a modification of a defendant's sentence. *Id.* at ¶ 29. In *Caldero*, as here, the trial court stated the correct sentence on the record at sentencing when imposing the sentence and in its judgment of conviction. *Id.* at ¶ 33. But in "recapping" the total sentence at the hearing, the court misspoke and stated that the sentence was less than what it had actually imposed. *Id.* at ¶ 18. On appeal, the defendant contended that the lesser sentence should be the controlling sentence. This court disagreed, stating that the trial court made a "mere calculation mistake," but that the "true sentence" was reflected on the record and in the court's sentencing entry. *Id.* at ¶ 29, 34.

{¶ 20} In light of the above, the first assignment of error is without merit and is therefore overruled.

{¶ 21} For his second assigned error, Banks contends that the trial court erred in imposing consecutive terms, when it had not originally done so.

{¶ 22} As mentioned, Banks was resentenced because this court reversed his convictions (with the exception of the escape conviction). After the reversal and remand, he was convicted, under a plea agreement with the state, of fewer offenses than he was when his case was tried to a jury. He was sentenced to fewer years than he had been originally sentenced to, but the second sentence included consecutive terms, which the original sentence did not (except for the mandatory consecutive time for the firearm and repeat violent offender specifications).

{¶ 23} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶ 24} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 25} Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court

must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to precisely recite the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

{¶ 26} In making the requisite findings under R.C. 2929.14(C)(4), the trial court stated the following on the record at the sentencing hearing:

> I review[ed] the facts of all of these cases, the dates of them and your record [and] I find that [consecutive sentences are], of course, necessary to protect the public from future crime, [they are] not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public. Also, the defendant has committed one or more of these offenses while under a sanction or was awaiting sentencing or resolution of cases. At least two of these offenses were committed as part of one or more courses of conduct. And of course, as I have said, since your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public.

{¶ 27} Further, the trial court incorporated the findings into its sentencing judgment entry. On this record, therefore, the trial court properly imposed consecutive sentences.

{¶ 28} To the extent that Banks's contention in this assignment of error relates to the trial court retaliating against him for a successful appeal, we are not persuaded.

{¶ 29} The United States Supreme Court held that a trial court violates the Due Process Clause of the Fourteenth Amendment under the U.S. Constitution when it imposes a harsher sentence motivated by vindictive retaliation. *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed. 2d 656 (1969). A presumption of vindictiveness arises when the same judge imposes a harsher sentence following a successful appeal. *Id.* at 724; *State v. Wagner*, 3d Dist. Union No. 14-06-30, 2006-Ohio-6855, ¶ 8.

{¶ 30} It is implicit in sentencing or resentencing that, along with determining the number of years of a prison term, a sentencing court also has the authority to order the prison term to be served either concurrently or consecutively to other sentences in a multicount conviction. *State v. Saxon*, 109 Ohio St.3d 176, 2006- Ohio-1245, 846 N.E.2d 824, ¶ 9; *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100. In the context of resentencing, "when one or more counts of a multi-count conviction are vacated and remanded, a court does not violate the principles of *Pearce* as long as the aggregate length of the new sentence does not exceed the total length of the original sentence." *State v. Nelloms*, 144 Ohio App.3d 1, 7, 759 N.E.2d 416 (2d Dist.2001); *see also State v. Pearson*, 130 Ohio App.3d 577, 586, 720 N.E.2d 924 (3d Dist.1998) (implying that order of consecutive

sentences on remand without justification violated *Pearce* where original sentence ordered concurrent sentences).

{¶ 31} Here, the aggregate length of the new sentence did not exceed the length of the original sentence. And although it is true that the original sentence was for more crimes and did not include discretionary consecutive sentences, while the resentence was for fewer crimes and did include discretionary consecutive sentences, we decline on that fact alone to find that it was in retaliation for a successful appeal, where there simply is no indication of that on the record. If the trial court wanted to retaliate or get as close as possible to the original 19-year sentence, it could have imposed maximum sentences, which it did not.

{¶ 32} On this record, we find no error in the imposition of consecutive sentences. The second assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

**LARRY A. JONES, SR., JUDGE**

**MARY EILEEN KILBANE, P.J., and**
**MARY J. BOYLE, J., CONCUR**