The STATE of Ohio, Appellee,

v.

PEARSON, Appellant.

[Cite as *State v. Pearson* (1998), 130 Ohio App.3d 577.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–98–16.

Decided Nov. 23, 1998.

578

580

*Paul F. Kutscher, Jr.*, Seneca County Prosecuting Attorney, and *Kenneth H. Egbert, Jr.*, Assistant Prosecuting Attorney, for appellee.

*Gene P. Murray*, for appellant.

SHAW, Presiding Judge.

This case is an appeal from the judgment and sentence of the Seneca County Court of Common Pleas, following a jury verdict finding defendant Eric B. Pearson guilty of abduction, gross sexual imposition (two counts), attempted rape, and rape.

In the early morning hours of April 2, 1994, Stacie Schwab was abducted by a male assailant while walking home from a party. The man forced Schwab to a wooded area near her house and demanded that she disrobe. In fear, Schwab

complied. The man fondled her breasts and inserted his finger in her vagina, then pushed her to the ground and placed a bag of some kind over her head. He next attempted to engage in forcible vaginal intercourse with Schwab but was initially unable to maintain an erection. He eventually penetrated Schwab vaginally and ejaculated. The assailant then removed the bag from her head and forced her to perform fellatio upon him, but did not ejaculate.

After repeatedly assaulting Schwab, the man allowed her to put her clothes back on, and produced a pair of gloves, which he made her wear. At this point, the assailant evidently became remorseful and apologized for his actions. He walked Schwab back to the street but fled toward some bushes when he saw the lights of an approaching vehicle, allowing Schwab to escape to her house. Schwab reported the incident to the Tiffin police and was taken to Tiffin Mercy Hospital, where a "rape kit" was administered. Semen was discovered on several pieces of Schwab's clothes and in her vaginal and anal cavities.

Defendant became a suspect in this case as well as another rape case, based upon similarities between the two crimes and descriptions of the perpetrator of each crime. On August 23, 1994, the trial court issued a journal entry allowing the state to obtain a blood sample from defendant, who was being detained on an unrelated charge. On September 12, 1994, the state obtained an initial blood sample from defendant, and defendant was indicted for the rape of Schwab on April 10, 1995. DNA tests on the blood sample indicated an extremely high probability that the semen on Schwab's clothing was defendant's.

Prior to trial, defendant filed a motion to suppress the initial blood sample. On June 19, 1995, the state filed an application for and affidavit in support of a search warrant for another blood sample. The search warrant was approved by a municipal court judge with no other connection to the case, and a second blood sample was obtained from defendant on that same date.

On August 16, 1995, the trial court overruled defendant's motion to suppress the September 12, 1994 blood sample, and only that sample was used at defendant's trial. On August 31, 1995, a jury convicted defendant of one count of abduction, two counts of gross sexual imposition, one count of attempted rape and one count of rape for the attack on Schwab. On September 13, 1995, the trial court sentenced defendant to eight to ten years' incarceration for the abduction, eighteen months' incarceration for each count of gross sexual imposition, twelve to fifteen years' incarceration for the attempted rape, and fifteen to twenty-five years' incarceration for the rape. All sentences were to be served concurrently.

Defendant appealed the judgment and sentence, and on October 4, 1996 this court reversed defendant's conviction. In *State v. Pearson* (1996), 114 Ohio App.3d 153, 682 N.E.2d 1077 ("*Pearson I*"), we held that the September 12, 1994 blood sample had been obtained in violation of the Fourth Amendment to the

U.S. Constitution and should have been excluded by the trial court, and that the use of that sample at trial prejudiced the defendant.

The state retried defendant on all charges over one year later, on January 26, 1998. The court denied defendant's motion to dismiss on speedy trial grounds. On two separate occasions prior to retrial the defendant made motions for change of venue, both of which were denied. The defendant also moved to suppress evidence obtained from the June 19, 1995 blood sample, which the court denied. Finally, the defense opposed the state's motion to admit "other acts" evidence, but the trial court granted the motion and allowed the evidence. This evidence included the testimony of two witnesses who did not testify at defendant's first trial on these charges.

On February 3, 1998, a jury found defendant guilty on all counts. That same day, the trial court sentenced defendant to eight to ten years' incarceration on the abduction charge, eighteen months' incarceration for each count of gross sexual imposition, twelve to fifteen years' incarceration on the attempted rape charge, and fifteen to twenty-five years' in prison for the rape charge. At the first trial the court had ordered concurrent sentences, but upon defendant's reconviction the trial court ordered that the terms be served consecutively, both to each other and also to other sentences the defendant was serving on different charges.

Defendant now appeals the judgment and sentence, and asserts five assignments of error.

"Error # 1: The trial court reversibly erred to the prejudice of the defendant-appellant, when said court overruled the defendant's motion to suppress the evidence of blood samples taken from the defendant-appellant, in substantial violation of the fundamental constitutional right to be secure from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

In our decision reversing defendant's prior guilty verdict, we held that in the absence of exigent circumstances the taking of a blood sample must be authorized by a search warrant or its equivalent, and in any case must be supported by probable cause. *Pearson I*, 114 Ohio App.3d at 158, 682 N.E.2d at 1079–1080. Accordingly, we concluded that the results of the September 12, 1994 blood test were illegally obtained without a warrant and were improperly admitted at defendant's first trial. *Id.* at 162, 682 N.E.2d at 1082.

In defendant's second trial, the state used only the blood evidence obtained pursuant to the June 19, 1995 search warrant. Defendant now argues that the warrant which authorized this second sample is invalid for lack of probable cause, and also claims that even if the warrant is supported by probable cause that the

second sample is a product of the first illegal sample and should be excluded under the "fruit of the poisonous tree" doctrine as described in *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

In reviewing a determination of probable cause, we are required to give great deference to the decision of the magistrate to issue a warrant, and are precluded from engaging in a *de novo* review of the issue. *Illinois v. Gates* (1983), 462 U.S. 213, 236–237, 103 S.Ct. 2317, 2331–2332, 76 L.Ed.2d 527, 546–548. Our role is merely "to ensure that the magistrate issuing the search warrant had a substantial basis for concluding that probable cause existed." *Pearson I*, 114 Ohio App.3d at 162, 682 N.E.2d at 1082, citing *Illinois v. Gates, supra.*

We previously held that where a search warrant authorizing a blood sample is supported by a "fair probability" that the sample will reveal evidence of a crime, probable cause exists. *Id.* at 153, 682 N.E.2d at 1077. The June 19, 1995 search warrant is supported by a six-page affidavit prepared by Tiffin Police Lieutenant Michelle Craig. The affidavit contains sixty-five paragraphs detailing the attacks on Stacie Schwab, Theresa Tiell, and Bethany Riley. It discusses defendant's involvement with several other sexual assaults and abductions. It describes in detail the many similarities between the attack on Tiell and the attack on Schwab, and the reasons for suspecting defendant in each attack.

We believe it to be beyond question that the affidavit filed in support of the June 19, 1995 warrant sets forth facts sufficient for a finding of probable cause, especially viewed in light of the deferential standard of *Illinois v. Gates.* See *Pearson I*, 114 Ohio App.3d at 159–162, 682 N.E.2d at 1080–1083. Defendant evidently concedes this point and thus does not attack the sufficiency of the affidavit itself. Instead, defendant seems to argue that the first blood sample logically must have been the source of the probable cause for the second. However, defendant has not offered any evidence in support of this argument.

The only new evidence defendant offered upon retrial is the testimony of Tiffin Municipal Court Judge Frederick R. Daniel Jr., who authorized the June 19, 1995 warrant. Defendant was apparently seeking to elicit evidence that Judge Daniel had knowledge of the prior blood sample and that Judge Daniel had relied upon that knowledge when he approved the July 19, 1995 search warrant. However, it is clear from a review of Judge Daniel's testimony that such evidence does not exist. There is nothing in Judge Daniel's testimony that indicates that he relied on anything other than the affidavit in support of that warrant when he found probable cause, or that he otherwise abandoned his "neutral and detached" role in issuing the search warrant. We therefore conclude once again that the drawing of a second blood sample from the defendant on June 19, 1995 was

indeed supported by probable cause and based on the issuance of a valid search warrant. See *Pearson I,* 114 Ohio App.3d at 162, 682 N.E.2d at 1082.

Defendant next argues under the doctrine of *Wong Sun v. United States* that the second blood sample is an illegal "fruit" of the first. He claims that because the state would never have sought the June 19, 1995 blood sample but for defendant's motion to suppress the September 12, 1994 sample, that the June 19, 1995 sample is therefore inadmissible. However, the "fruit of the poisonous tree" doctrine, also known as the derivative evidence rule, does not require the exclusion of all evidence that might not have been discovered "but for" the illegal actions of the police. *Wong Sun,* 371 U.S. at 487, 83 S.Ct. at 417, 9 L.Ed.2d at 455. The rule only operates to exclude derivative evidence that is discovered as a result of a constitutional violation. *Id.* at 484–486, 83 S.Ct. at 415–417, 9 L.Ed.2d at 452–454. Evidence obtained pursuant to an independent source unrelated to the constitutional violation is admissible. For example, in *Murray v. United States* (1988), 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472, the Supreme Court determined that contraband initially observed during a prior illegal search is not subject to exclusion when it is subsequently seized under a valid warrant based upon wholly independent information.

The present situation is analogous. Merely because the police might not have sought the second sample "but for" the pending motion to suppress does not automatically render that sample inadmissible. We again must observe that there is no evidence that Judge Daniel relied upon information outside Lt. Craig's affidavit to determine that there was probable cause to issue the search warrant. Although defendant argues that Lt. Craig's motivation for the search warrant must logically have been the possible suppression of the first sample, he offers no evidence on this point.

In short, we find that the second sample was the product of the several independent sources of information recounted in Lt. Craig's affidavit, none of which were related to the first blood sample. See *State v. Pearson* (1996), 114 Ohio App.3d 168, 179, 682 N.E.2d 1086, 1093–1094 (*"Pearson II"*). The two blood samples are thus separate and distinct, and the illegality of the first sample does not "taint" the second. Defendant's first assignment of error is accordingly overruled.

"Error # 2: In denying the defendant's motions for a change of venue, the trial court abused its discretion, erring to the prejudice of the defendant-appellant, with said prejudicial error substantially affecting the defendant-appellant's right to a fair and impartial jury trial, as guaranteed by the Sixth Amendment to the Constitution of the United States, as applied to the states through the Due

Process Clause of the Fourteenth Amendment to the Constitution of the United States."

Defendant's second assignment of error actually argues two separate points. First, defendant contends that the trial court erred in denying his motion for a change of venue. Second, defendant contends that the trial court erred by modifying his sentence after the retrial. We will first address defendant's venue concerns. Defendant filed two separate venue motions, each contending that the massive publicity surrounding defendant made it impossible for him to receive a fair trial.

██ Decisions on change of venue based on publicity are largely within the discretion of the trial court. *State v. Fox* (1994), 69 Ohio St.3d 183, 189, 631 N.E.2d 124, 129–130. The trial court is in the best position to judge whether publicity has affected defendant's right to a fair trial, and voir dire is the best opportunity to judge whether prejudice against the defendant exists in the community. *State v. Maurer* (1984), 15 Ohio St.3d 239, 250–251, 15 OBR 379, 388–390, 473 N.E.2d 768, 780–781. We will not overturn a trial court's decision overruling a motion for change of venue unless that decision is a clear abuse of discretion. *State v. Landrum* (1990), 53 Ohio St.3d 107, 116, 559 N.E.2d 710, 721–722.

██ A review of the voir dire record indicates no error whatsoever. The judge made considerable effort to ensure that the jury was fair and impartial, and questioned the entire pool for potential biases. Although several potential jurors had been exposed to pretrial publicity, the only potential juror who indicated that this would affect his judgment was excused *sua sponte* by the trial court. Moreover, defense counsel did not challenge even one juror for cause. Under these circumstances, we believe that it was well within the trial court's discretion to deny defendant's motion for change of venue.

██ However, defendant's second argument is that the trial court's denial of the motion was itself motivated by a prejudice against the defendant. Defendant argues that because the defendant's original sentences were to be served concurrently and that the judge ordered that the sentences be served consecutively after the defendant was reconvicted, that the judge was biased and thus defendant was denied a fair trial.

In support of his contention, defendant points to the judge's remarks at the sentencing hearing:

"MR. NEEDLES: Was the order consecutive to each other, I believe that would be. Did the Court mean to say that?

"THE COURT: I meant to be consecutive to each other.

"MR. NEEDLES: Okay.

"THE COURT: Having heard the testimony again and listened to the testimony, I realize that previously I had run it concurrently."

We are unpersuaded by defendant's argument that these remarks at sentencing bear upon the denial of defendant's change of venue motion. However, the change in sentence is itself of some concern. In *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, the United Supreme Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."

■ The Due Process Clause is therefore implicated in any case where a defendant is resentenced following a successful appeal of a guilty verdict. *Id.* at 725, 89 S.Ct. at 2080, 23 L.Ed.2d at 669. Although the *Pearce* decision was subsequently modified and limited, see *Alabama v. Smith* (1989), 490 U.S. 794, 799, 109 S.Ct. 2201, 2204–2205, 104 L.Ed.2d 865, 872–873, its general rule remains the law:

"[T]he sentencing judge who presides at both trials can be expected to operate in the context of roughly the same sentencing considerations after the second trial as he does after the first; any unexplained change in the sentence is therefore subject to a presumption of vindictiveness." *Id.* at 802, 109 S.Ct. at 2206, 104 L.Ed.2d at 874.

Therefore, while the change in sentence does not logically relate to defendant's venue motion, we believe it does raise an independent issue: whether the record presents affirmative reasons and an adequate explanation for the change in sentence, such that the sentence was not the product of vindictiveness. See, *e.g., Texas v. McCullough* (1985), 475 U.S. 134, 137, 106 S.Ct. 976, 978, 89 L.Ed.2d 104, 110–111.

On this point, we are persuaded that the new evidence considered by the court—the testimony of Theresa Tiell, Jennifer Nacca, and Bethany Riley—is sufficient to dispel the presumption of vindictiveness. None of these witnesses testified at the first trial, and the judge clearly stated on the record that their testimony was paramount in his decision to sentence defendant to consecutive terms:

"There is little doubt in the Court's mind, Mr. Pearson, that you are the person responsible for the rapes, not only in this case but in the other case [the attack on Ms. Tiell]. And, uh, but for the grace of God there would be two more victims, I think, of rape—Ms. Nacca and Ms. Riley.

"If it were in my power to keep you in jail, in prison, for the rest of your life I would do that. I am firmly convinced of your guilt in this case. There is no doubt in my mind. None."

We must further observe that the defendant was convicted and sentenced for the attacks on Tiell and Nacca in separate proceedings, which took place after the first trial in this case. Therefore, we believe that the trial court permissibly concluded that the attacks on Tiell, Nacca, and Riley indicate that defendant is a dangerous repeat offender likely to commit future crimes, and considered those attacks in its sentencing decision. See former R.C. 2929.12(B)(1). It was therefore within the trial court's discretion to sentence defendant to consecutive terms. Accordingly, we overrule defendant's second assignment of error.

"Error # 3: The trial court abused its discretion when it granted the state's motion to admit other acts evidence, thereby resulting in harmful prejudice to the defendant-appellant, and so constituting reversible error, by denying the defendant-appellant a fair jury trial, and by denying the defendant–appellant due process of law."

Defendant's third assignment of error attacks the trial court's decision to allow the "other acts" testimony of three witnesses: Theresa Tiell, Bethany Riley, and Jennifer Nacca. While acknowledging our prior holding that there was a sufficient nexus between the testimony of Theresa Tiell and that of Stacie Schwab, see *Pearson II*, 114 Ohio App.3d at 187, 682 N.E.2d at 1098–1099, defendant argues that the trial court's decision to allow the more tenuously connected testimony of Riley and Nacca was erroneous. Furthermore, he now argues that the cumulative effect of all three "other acts" witnesses was an impermissible attempt to present evidence of defendant's bad character.

Defendant correctly observes that "an accused can not be convicted of one crime by proving he committed other crimes or is a bad person." *State v. Jamison* (1990), 49 Ohio St.3d 182, 184, 552 N.E.2d 180, 183. However, the prohibition on "other acts" evidence is subject to certain exceptions. Evid.R. 404(B) provides:

"Evidence of the other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Other-acts evidence is therefore admissible if there is substantial proof that the other act was committed by the defendant and if the act does tend to prove one of the purposes listed in Evid.R. 404(B). *State v. Lowe* (1994), 69 Ohio

St.3d 527, 530, 634 N.E.2d 616, 618–619. The Ohio Supreme Court has stated the rationale that supports the admission of such *modus operandi* evidence:

"A certain *modus operandi* is admissible not because it labels the defendant a criminal, but because it provides a behavioral fingerprint which, when compared to behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain *modus operandi*, other-acts evidence must be related to and share certain common features with the crime in question." *Id.* at 531, 634 N.E.2d at 619–620.

Here, the state has argued that all three other acts witnesses were introduced for the purpose of establishing defendant's identity as the perpetrator of the attack on Schwab. Defendant apparently concedes that the testimony of Theresa Tiell was properly admitted standing alone, but claims that its use in conjunction with the Riley and Nacca testimony unfairly prejudiced defendant.

Defendant argues that the attacks on Riley and Nacca are not "related to" and do not "share common features" with the attack on Schwab as required by *State v. Lowe*. Defendant claims that the attacks share only the most general characteristics and do not display a "behavioral fingerprint" sufficient to show that he committed them or to otherwise establish their admissibility.

A review of each woman's testimony indicates otherwise. All three women (Nacca, Riley, and Schwab) were grabbed from behind by a man of approximately the same description wearing a blue bandanna around the lower half of his face. In each case, the assailant attempted to drag the victim to a more secluded area nearby, and in each case verbal threats implying death were used to coax the victim to comply with the attacker's wishes.

Moreover, each woman's testimony contains other details that support admissibility. Riley, who was attacked on June 14, 1994 (the same day as Theresa Tiell) gave a detailed description of defendant's automobile and observed that her attacker was wearing both gloves and sweatpants over jeans. On February 18, 1994, the defendant had been observed by a police officer dressed in that same fashion, and gloves played a significant role in the attack on Schwab. The man who grabbed Nacca apologetically claimed that he "was not normally like this," similar to the apologies of the man who attacked Schwab. He also asked Nacca if she had been drinking, a question that the defendant also asked of Schwab. Nacca later positively identified her attacker as the defendant.[1]

---

1. Prior to defendant's second trial, he was convicted on charges stemming from the attack on Nacca, and that conviction was upheld on appeal. See *State v. Pearson* (Oct. 10, 1997), Wood App. No. WD–96–067, unreported, 1997 WL 640589.

We conclude that both Riley's and Nacca's testimony describe events that share enough common features with and are sufficiently related to the attack on Schwab to survive the test established in *State v. Lowe*. The testimony was therefore within the trial court's discretion to admit.

Regarding the testimony of Theresa Tiell, we have previously observed:

"The circumstances surrounding the rapes of Schwab and Tiell contain many similarities. Both rapes were committed in the same area of Tiffin, Ohio within a three-month period by a white male of medium build. Both victims were alone in the dark when they were attacked from behind and threatened with physical harm. After being stripped of their clothing, both victims had their faces covered by a gloved assailant. The perpetrator then began the same series of sexual offenses against the victims. In both cases, the assailant was unsuccessful in his first attempts at rape; however, once he became angry and engaged in more threats he was able to complete the crimes. After the rapes, the assailant became apologetic, physically caressed his victims, and warned them against contacting the police." *Pearson II*, 114 Ohio App.3d at 186–187, 682 N.E.2d at 1098.

These observations, based upon a proffer of evidence in a prior proceeding, fully comport with the evidence presented at trial in the case before us. For the foregoing reasons and because defendant has not offered any new evidence on this point, we once again determine that the testimony of Theresa Tiell satisfies the test of *State v. Lowe*, and was thus properly admitted to establish defendant's identity as the perpetrator of the attack on Schwab.

However, defendant argues that the probative value of the cumulative testimony of Jennifer Nacca, Theresa Tiell and Bethany Riley was substantially outweighed by its tendency to confuse and mislead the jury or unfairly prejudice the defendant. Evid.R. 403(A). On review of the record, it appears that the testimony's probative value was high, and the danger of unfair prejudice was properly addressed. We observe that the testimony of all three women was highly relevant to the identity of Schwab's attacker, and the judge properly instructed the jury that the testimony was admitted for a limited purpose. Furthermore, though the evidence demonstrating the identity of Schwab's attacker was complex and involved similarities among all of the crimes, it was not so confusing or misleading as to require exclusion. We therefore believe that all of the testimony regarding other acts was properly admitted, and overrule defendant's third assignment of error.

"Error # 4: the trial court reversibly erred, when it overruled the defendant's motion to dismiss for violation of speedy trial rights, in violation of O.R.C. § 2945.71 and § 2945.72, and/or in violation of the Sixth Amendment to the Constitution of the United States, as applicable to the states through the Due

Process Clause of the Fourteenth Amendment to the Constitution of the United States."

On October 4, 1996, this court issued a judgment and opinion reversing defendant's first conviction on these charges. *Pearson I,* 114 Ohio App.3d 153, 682 N.E.2d at 1077. Defendant's retrial did not begin until January 26, 1998, nearly sixteen months later.

■ Although defendant has asserted that his speedy trial rights under R.C. 2945.71 and 2945.72 were violated, it is well settled that those statutes have no application where a verdict has been reversed on appeal and a new trial has been ordered. *E.g., State v. Turner* (1982), 4 Ohio App.3d 305, 305–306, 4 OBR 556, 556–558, 448 N.E.2d 516, 517–519. Thus, any speedy trial claim defendant has is limited to his rights under the U.S. Constitution as explained in the Supreme Court's decision in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101.

■ In *Barker,* the court established a balancing test which is used to assess constitutional speedy trial claims. Four factors are analyzed: length of delay, reason for delay, defendant's assertion of the right, and prejudice to defendant. *Id.* at 530, 92 S.Ct. at 2191–2192, 33 L.Ed.2d at 116–117. However, the court also observed that unless the length of the delay is "presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* In *State v. Pusey* (July 11, 1991), Shelby App. No. 17–90–1, unreported, 1991 WL 128233, we followed this recommendation and determined that where a delay is reasonable, it was unnecessary to engage in a weighing of the other three factors.

■ Here, defendant claims that the sixteen-month delay was presumptively prejudicial. We would normally agree that a sixteen-month delay raises a presumption of prejudice. However, we must note that the defendant had another trial on different charges before the same court during this period, which clearly accounts for some of the delay. Moreover, substantial delay was caused by defendant's own pretrial motions. On February 13, 1997, defendant filed three motions, including a motion to change venue and motion to suppress the June 19, 1995 blood test results. The motion to change venue was heard on July 21, 1997, but the suppression motion was not heard until August 20, 1997, in part because defendant's witness was unavailable. On December 31, 1997, defendant filed a motion to dismiss for violation of his right to a speedy trial. The trial court did not hear this motion until January 16, 1998 because defendant's counsel requested a continuance. Thus, nearly seven months (two hundred four days) of the delay complained of are due to the defendant's own actions. Furthermore, defendant's counsel acquiesced in every continuance granted to the state. Final-

ly, defendant was serving part of a prison sentence for other convictions during the entire sixteen-month period.

Given the foregoing, we cannot say that the delay was presumptively prejudicial to the defendant. Defendant's fourth assignment of error is accordingly overruled.

"Error # 5: The trial court reversibly erred when it sentenced the defendant-appellant to illegal consecutive sentences, wherein the aggregate minimum sentences exceeded fifteen (15) years in prison, under the applicable sentencing statute for offenses alleged as committed prior to July 1, 1996, to wit, O.R.C. § 2929.41(E)(2)."

Defendant's final assignment of error alleges that because of the trial court's decision to run his sentences consecutively, it erroneously sentenced him to an aggregate minimum sentence of thirty-eight years in violation of the mandate of former R.C. 2929.41(E)(2).

That statute provided:

"Consecutive terms of imprisonment imposed shall not exceed * * * [a]n aggregate minimum term of fifteen years, plus the sum of all three-year terms of actual incarceration imposed pursuant to section 2929.71 of the Revised Code and the sum of all six-year terms of actual incarceration imposed pursuant to section 2929.72 of the Revised code, when the consecutive terms imposed are for felonies other than aggravated murder or murder[.]"

In *State v. White* (1985), 18 Ohio St.3d 340, 18 OBR 381, 481 N.E.2d 596, the Supreme Court held that where a trial court's sentence exceeds the statutory minimum established for consecutive terms, that judgment is not the basis for reversible error because R.C. 2929.41(E)(2) is self-executing. We followed this rule in *State v. Knight* (Mar. 31, 1995), Allen App. No. 1–94–53, unreported, 1995 WL 138849, and also in *State v. Rickard* (Sept. 25, 1992), Mercer App. No. 10–91–5, unreported, 1992 WL 239325. Accordingly, we overrule defendant's fifth assignment of error.

For the foregoing reasons, the judgment and sentence of the Common Pleas Court of Seneca County is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and HADLEY, JJ., concur.