OPINION
{¶ 1} D.D. was adjudicated a delinquent child by the juvenile court, following a hearing in which two victims of an aggravated robbery positively identified D.D. as the perpetrator. The court ordered D.D. placed on intensive supervision probation. D.D. filed a timely notice of appeal. *Page 2 
 FIRST ASSIGNMENT OF ERROR
 {¶ 2} "THE APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL BASED UPON A FAILURE TO FILE A MOTION TO SUPPRESS THE PRETRIAL IDENTIFICATIONS."
 {¶ 3} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id.; State v. Bradley (1989),42 Ohio St.3d 136. Where the basis of an ineffective assistance of counsel claim is counsel's failure to file a motion to suppress evidence, the defendant making that claim must prove that the basis of the suggested suppression claim is meritorious. Kimmelman v. Morrison (1986),477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305; State v. Pillow, Greene App. No. 07CA95, 2008-Ohio-6046.
 {¶ 4} When a witness who identifies a defendant has been confronted with a live or photographic lineup of suspects, due *Page 3 
process requires the court to suppress evidence of the witness's identification of the defendant if the confrontation was unduly suggestive of the defendant's guilt and the witness's identification of the defendant was unreliable under the totality of the circumstances.State v. Waddy (1992), 63 Ohio St.3d 424; State v. Murphy (2001),91 Ohio St.3d 516. In applying the totality of the circumstances test the court must consider (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Neil v. Biggers (1972), 409 U.S. 188, 199-200,93 S.Ct. 375, 34 L.Ed.2d 401.
 {¶ 5} The Biggers standards look to the reliability of the identification itself instead of the suggestive nature of the procedures that produced the identification. Nevertheless, "[a]gainst these factors is to be weighed the corrupting effect of the suggestive identification itself." Manson v. Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243,53 L.Ed.2d 140.
 {¶ 6} D.D. was adjudicated delinquent on a finding that he committed an aggravated robbery on January 19, 2007. On that *Page 4 
date, a young African-American male entered the location of the National Cash Advance business in Xenia. He produced a handgun and demanded money from two employees who worked there, Shawna McCann and Christina Fisher. They gave the robber approximately $2,500 in cash, and he then fled on foot.
 {¶ 7} In their subsequent police interviews, McCann described the robber as a black male, 5'11" to 6'0" in height, 175 to 180 pounds in weight, in his mid-twenties, having a thin face, and being clean shaven, with short stubble hair and crooked teeth. Fisher described the robber as a black male, 6'4" to 6'5" in height, skinny, in his early twenties, bald but with a little hair, and having a large nose. Fisher also told police that the robber had entered the National Cash Advance location earlier that day and requested to have a check cashed. When Fisher told him that they do not cash checks, he threw his hood back and left the store. This frightened Fisher, as she suspected they might be robbed.
 {¶ 8} Five or six days after the robbery, Xenia Police Detective Fred Meadows showed a photographic lineup of suspects to McCann. She identified one suspect as the perpetrator. But, it was determined that the suspect was incarcerated when the robbery occurred on January 19, 2007.
 {¶ 9} Approximately four months after the robbery, in May *Page 5 
of 2007, McCann saw a male whom she believed was the robber, standing on a bike path near downtown Xenia. She observed the man for several minutes, and then telephoned Xenia police. McCann was connected with Detective Darren Barlow. McCann told Barlow of her suspicions, and that the man was at that point walking past police headquarters. Detective Barlow looked out his office window and saw a male whom Barlow recognized from prior contacts as D.D. By the time Barlow got outside the building, D.D. was gone.
 {¶ 10} Detective Barlow communicated this information to Detective Meadows. Because Xenia police had no photo of D.D. to show McCann and Fisher, and on information that D.D. was a student at Central Middle School, Meadows waited until August of 2007, when the school published its yearbook containing a photo of D.D. After concealing the names of the students pictured on one page of the yearbook, Meadows separately asked McCann and Fisher whether they could identify the male who had robbed them in January of 2007 from those photos.
 {¶ 11} A copy of the page of the yearbook that Detective Meadows showed McCann and Fisher is attached to his police report. The page contains thirty-five photographs of students, male and female. Six black male students are depicted. D.D.'s photograph most closely resembles the *Page 6 
description of the robber McCann and Fisher had provided.
Meadows testified that all the names, which appear in a column on the right side, were concealed when he showed the yearbook to McCann and Fisher. He also testified that he told McCann and Fisher that the robber might or might not be depicted. Both McCann and Fisher promptly identified D.D. Fisher testified at trial that when she saw D.D.'s photo, "I did a double take . . . a Deja Vu type of thing . . ." (T. 22).
 {¶ 12} Typically, when an eyewitness is asked to identify a suspect from among a selected array of photographs, a neutral presentation is sought. If the eyewitness or another person has provided a physical description of the suspect, the other photos selected are those of persons who also resemble that description. Furthermore, distinguishing characteristics peculiar to the suspect are avoided, if possible.
 {¶ 13} By presenting McCann and Fisher photos that appear as a page of a school yearbook, and identifying it as such, the procedure employed by Detective Meadows implied a likelihood that the culprit was a student at the school, and was therefore one of the students shown on the page of the yearbook. All but six of these shown are eliminated on factors of race and gender, and only one of the six African-American males shown reasonably resembles the physical *Page 7 
description of the robber that McCann and Fisher gave police.
Therefore, we conclude that the procedure Meadows followed was unduly suggestive of D.D.'s guilt. Suppression would be required if, in addition, McCann and Fisher's resulting identification was unreliable under the totality of the circumstances, Murphy, Waddy, being also uncorrupted by the suggestive identification itself.Brathwaite.
 {¶ 14} We believe that McCann and Fisher's identification of D.D. from the photo they were shown was not unreliable. Both had a sufficient opportunity to see D.D. during the robbery, and Fisher had seen him in the store earlier that day. Nothing in the record suggests that their attention was distracted during the robbery. The descriptions each gave, though the two varied in some respects, were similar, and D.D. does not contend that they do not fairly describe him.
 {¶ 15} The length of time between the robbery in January and the two witnesses' identification of D.D from the photo array in August is attenuated. However, that is offset by the certainty the two witnesses showed. McCann had independently identified D.D. as the robber when she saw him in May and reported that to police. When Fisher was shown the photo array and identified D.D., she was so certain that she "did a double-take." Those facts do not suggest that the *Page 8 
identifications were corrupted by the flaws in the photographic lineup procedure itself.
 {¶ 16} The motion to suppress evidence that D.D. argues his counsel should have filed would lack merit on the basis of the claim asserted. Therefore, D.D. was not prejudiced by his counsel's failure to file the motion, precluding a finding of ineffective assistance.Strickland. The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 17} "APPELLANT'S ADJUDICATION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} D.D.'s sole contention in support of the error he assigns is: "This Second Assignment of Error obviously hinges on a claim that the pretrial identification was improper in this case. If the First Assignment of Error is sustained, then the adjudication becomes flawed." (Brief, p. 7).
 {¶ 19} D.D. is correct that a finding of ineffective assistance of counsel would render his adjudication as a delinquent child "flawed," and fatally so. In that event, reversal would be required. However, that reversal would also render any weight or sufficiency of the evidence challenges to that adjudication moot.
 {¶ 20} We have found that D.D. was not prejudiced by his *Page 9 
trial counsel's failure to file a motion to suppress. It does not then necessarily follow that D.D.'s adjudication is not supported by the weight and sufficiency of the evidence the State presented at the adjudication hearing. However, absent any specific contentions in support of the error D.D. assigns, and because we do not perform a de novo review of that error, the presumption of regularity requires us to affirm the juvenile court.
 {¶ 21} The second assignment of error is overruled. The judgment of the juvenile court will be affirmed.
 BROGAN, J. And FAIN, J., concur. *Page 1