[Cite as *State v. Hofacker*, 2016-Ohio-519.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2015-CA-5 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 14-CR-176 |
| v. | : | |
| | : | (Criminal Appeal from |
| RANDY L. HOFACKER | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of February, 2016.

. . . . . . . . . . .

R. KELLY ORMSBY, III, Atty. Reg. No. 0020615, and DEBORAH S. QUIGLEY, Atty. Reg. No. 0055455, Darke County Prosecutor's Office, Courthouse, 504 South Broadway Street, Greenville, Ohio 45331
        Attorneys for Plaintiff-Appellee

SCOTT S. DAVIES, Atty. Reg. No. 0077080, Sebaly Shillito + Dyer, L.P.A., 1900 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

        {¶ 1} Defendant-appellant Randy Hofacker appeals from his conviction and sentence for Robbery. Hofacker contends the trial court erred by failing to excuse biased

jurors, and that his counsel was ineffective by failing to file a motion to suppress. The State contends the record does not support that the challenged jurors were biased. The State further contends that defense counsel's alleged error was not prejudicial.

{¶ 2} We conclude Hofacker has not established that he was prejudiced by his counsel's failure to file a motion to suppress. We also find no defect in the jury selection process. Therefore, the judgment of the trial court is Affirmed.

## I. Late Night Intrusion and Theft of 90-Year-Old Victim

{¶ 3} Shortly after 11:00 p.m., Hofacker knocked on the door of the victim's home. The victim arose out of bed, and answered the door. Hofacker asked to come in to use the bathroom. Prior to this evening, he had been to the victim's house on two occasions, at night, when he borrowed money for gas and to feed his children, and had promised to repay her. When he stated that he had the money he owed her, the victim let him in the house. After he entered the house, Hofacker physically attacked the victim and demanded money. Hofacker took the only money the victim had in the house, $2.00. The victim's screams for help were heard by a neighbor, who came to the house and saw Hofacker running out the back. The neighbor only saw Hofacker for a few seconds, could not see Hofacker's face, and could only generally describe him as wearing dark pants and a dark shirt. The neighbor's wife called the police. When the police arrived, the victim identified her attacker as a man she knew as "Jeff." The attack on the victim left bruises on her arms and her chin. At the time of the offense, the victim was 90 years old, and was not wearing her prescription glasses. She was later unable to recall some details of the events; in the arrest warrant it is alleged that the offender threatened to kill her with a pair of scissors, but at trial she testified that she never saw any scissors.

{¶ 4} The following day, the police questioned the neighbor again, at the victim's residence. At that time, the neighbor identified Hofacker by name, and said that he had seen Hofacker around the victim's home on previous occasions, but did not say when these visits occurred. The officer used the computer in his police vehicle to run the name, which resulted in two hits: a Randall Hofacker and a Randy Hofacker. The system included a mug shot photo of Randy Hofacker, so the officer called the station and asked another officer to print out the photo and bring it to the scene. The neighbor confirmed Hofacker's identity from the photo the police showed him. Although the officer did not show the photo to the victim at this time, she was on the porch with the neighbor and the officer, and she also saw the photo identified by her neighbor as Hofacker. She agreed that it was her attacker. The next day, the victim was shown a photo array of six photographs, and positively identified Hofacker. As a result of this photo identification, a complaint was filed charging Hofacker with Aggravated Robbery, and an application for an arrest warrant was filed. The arrest warrant application, signed by Det. J.E. Marion, stated:

> [The neighbor] saw the suspect run through the house and out of the back door. He didn't give chase because he tended to the victim. On 08/03/14, P.O. Benge developed a possible suspect of Randy Hofacker because he had been at the house 2 times previously scamming the victim out of money. On 08/04/14, I prepared a photo line-up and Det. Kiryluk, ECO Jones and I went to the victim's house. ECO Jones was the blind administrator since she didn't know the name or identity of Hofacker. Almost immediately, the victim identified Randy Hofacker. She stated, "Right

there's the one!" Det. Kiryluk asked if that was the guy that was here and she stated, "That's…yes indeed. I know it's him." I asked if she was positive and how certain and she stated, "Yes. Yes. 100%."

**{¶ 5}** The next day, Hofacker was arrested, and a sample of his DNA was obtained. Hofacker's DNA was found to match a DNA sample taken from the victim's bathrobe she was wearing on the night of the incident.

## II. The Course of Proceedings

**{¶ 6}** Hofacker was indicted on one count of Aggravated Robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), and one count of Robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2). Hofacker was acquitted of the Aggravated Robbery charge and was found guilty of Robbery. Hofacker was sentenced to serve a 7-year term of imprisonment, and ordered to pay costs and restitution.

**{¶ 7}** Prior to trial, the police obtained a DNA sample from Hofacker and from the victim. Also, touch DNA samples were extracted from the victim's home and from the bathrobe she was wearing on the night of the incident. A DNA expert from the Ohio Bureau of Criminal Investigation conducted DNA testing on the samples and found no DNA on any of the extracted samples from the house, but did find a match on the victim's bathrobe. The bathrobe contained a mixed profile that included DNA from both the victim and Hofacker. The accuracy of Hofacker's DNA identification was one in 259 quadrillion, 200 trillion. Hofacker filed a motion, requesting an independent analysis, but the record does not contain an entry granting or denying the request. Hofacker did not present the testimony of an independent DNA expert at trial.

**{¶ 8}** Prior to trial, defense counsel filed a motion in limine asking the court to

deny the admission of certain evidence during the trial, including any evidence revealing the defendant's past criminal history, anything regarding a polygraph exam, and all evidence involving the defendant's identification through the photo array. The motion specifically raised the impropriety of the photo identification "because prior to conducting of said photo lineup, Officer Benge, in showing a single photograph of the Defendant to [the neighbor], negligently permitted the victim, [R.C.,] to observe said photograph. Further, after she chose the Defendant from the photo lineup, she commented that she had seen the Defendant's picture before." Dkt. #34. During cross-examination of the neighbor who initially named Hofacker as a suspect, the neighbor testified that he had a prior conviction for trafficking in drugs, and that his conviction was based on a controlled buy with a confidential informant. It was also established that Hofacker had acted as a confidential informant for the local police. The neighbor also testified that he had known Hofacker for 40 years, and after thinking about it during the day following the incident, he came to the conclusion that it was Hofacker who had attacked his neighbor. During the trial, both the victim and the neighbor positively identified Hofacker, in the courtroom, as the person who committed the offense.

{¶ 9} The record does not contain a written ruling on the motion in limine to exclude the testimony regarding the photo array identification. Defense counsel did not file a motion to suppress, or object, during the trial, to the testimony of the officer concerning the photo array identification by the victim. The officer admitted upon cross-examination that the process used for the photo identification of Hofacker was not in accordance with the established procedures of the Greenville Police Department. In the final jury charge, the trial court gave the jury the following cautionary instruction:

The testimony indicates that a photo array was used to identify the alleged perpetrator. However, there is testimony that a photo of the Defendant similar to one used in the array was previously seen by the victim. This prior viewing may have resulted in the array being inappropriately suggestive. You are to consider whether the prior viewing of a single photo was suggestive of the identity of the perpetrator. If suggestive, you are to consider whether this prior view affects the weight that you give to the identification based on the photo array and based upon all the evidence at trial regarding identification.

{¶ 10} During voir dire, three prospective jurors expressed concern over their ability to be fair and impartial. After Ms. B. stated that she had read about the case in the local newspaper, she stated that she could not say for sure whether it would cause her to have a preconceived opinion about the defendant's guilt. After further questioning, Ms. B. explained that she believed what she read in the paper, so she would expect the defendant to prove that he did not commit the crimes. However, she also said that she understood that Hofacker was presumed innocent. Mr. R. stated that he would find a police officer more credible than other witnesses. Mr. H. indicated that he personally knew Hofacker and his reputation. Mr. H. said that he would like to think he could set that aside, but he was not sure if he could. Follow-up questions were posed by the trial court to correct any misconceptions each juror might have about the juror's duty to set aside personal beliefs and decide the case on the evidence admitted and the law provided by the court. The trial court overruled the challenge for cause of Mr. H., Mr. R., and Ms. B. Mr. R. was removed through a peremptory challenge made by the defense. The

defense exercised one other peremptory challenge, but did not utilize the right to use a peremptory challenge on Mr. H. or Ms. B., both of whom served on the jury.

{¶ 11} After Hofacker was convicted of Robbery, the trial court sentenced Hofacker to serve 7 years in prison, with mandatory post-release control for 3 years. Hofacker was ordered to pay costs, and restitution to the victim in the amount of $2.00.

### III. Standard of Review

{¶ 12} "It is the role of the court to determine the individual juror's ability to follow the law and be impartial." *State v. Jakobiak*, 6th Dist. Lucas No. L-07-1158, 2008-Ohio-5030, ¶ 10, citing *State v. Williams,* 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997). "Because the trial court exercises its discretion when determining whether to excuse a juror for cause, the trial court's ruling will not be overturned on appeal 'unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion.'" *Jakobiak, supra*, quoting *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 38.

{¶ 13} "To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different." *State v. Veal*, 2d Dist. Montgomery No. 25253, 2013-Ohio-1577, ¶ 7, citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Id.*

## IV. Hofacker Was Not Prejudiced by the Jury Selection Process

{¶ 14} Hofacker's First Assignment of Error asserts as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED A CHALLENGE FOR CAUSE OF PROSPECTIVE JURORS WHO STATED THEY COULD NOT BE FAIR AND IMPARTIAL

{¶ 15} A juror's disclosure during voir dire that he or she cannot be a fair and impartial juror is good cause for challenging a juror. Crim.R. 24(C)(9); *State v. Jakobiak*, 6th Dist. Lucas No. L-07-1158, 2008-Ohio-5030, ¶ 10. A juror's initial opinion can be rehabilitated by additional inquiry. Crim R. 24(C)(9). We have recognized that a trial court can properly rehabilitate a juror by correcting misconceptions and verifying that the juror can put aside the juror's personal experiences and be fair and impartial, but that it is not proper for the trial court to rehabilitate a juror through leading questions that suggest what the juror is expected to say. *State v. Mundy,* 99 Ohio App.3d 275, 298, 650 N.E.2d 502 (2d Dist.1994), in which we opined:

Trial judges often, wittingly or unwittingly, exert considerable influence upon jurors, who, due to the nature of their role in the courtroom, can be expected to pick up their cues from the trial judge concerning how they should behave. Trial judges may certainly conduct voir dire; a trial judge may interrogate a prospective juror in order better to ascertain whether he is actually biased and prejudiced, and the trial judge may clear up any misconceptions that the prospective juror may have concerning his role and duties as a juror. However, a trial judge must be careful not to cross

the fine line between: (i) a trial judge's voir dire that merely explores what the prospective juror is really saying about his inability or ability to try the issues fairly and impartially, or that clears up any misconception that the prospective juror may have as to his proper role and duties, on the one hand and, on the other hand, (ii) a voir dire by the trial judge that communicates to the prospective juror that what the judge wants and expects the prospective juror to say is that he will put aside any bias and prejudice, and try the issues fairly and impartially. Because of the pervasive influence that a trial judge can ordinarily be expected to have on the behavior of jurors, as the expert, neutral embodiment of justice in an adversary process with which the juror ordinarily will be unfamiliar, the latter kind of voir dire by a trial judge is not sufficient to rehabilitate a prospective juror who has already undermined confidence in his ability to try the issues fairly and impartially, to the extent that he should be excused for cause.

*Mundy*, at 298-299, citing *State v. Leavell,* 2d Dist. Montgomery No. 10919, 1989 WL 33104 (Apr. 7, 1989).

{¶ 16} Based upon our review of the record, we conclude that it was not arbitrary or unreasonable for the trial court to conclude that each of the challenged jurors could be fair and impartial. Furthermore, Hofacker has failed to demonstrate that he was prejudiced by the trial court's failure to excuse the challenged jurors for cause. The record reveals that one of the three jurors was excused from jury service pursuant to a peremptory challenge. The record also reveals that defense counsel had the opportunity to, but did not, exercise peremptory challenges to excuse the other two challenged jurors, instead

passing on remaining peremptory challenges available to Hofacker, thereby expressing satisfaction with the jury as it was then constituted. Pursuant to R.C. 2945.21(A)(1), and Crim. R. 24 (D), a single defendant, charged with a felony, has the right to exercise four peremptory challenges to dismiss potential jurors. After exercising two peremptory challenges to excuse two jurors, Hofacker had the opportunity to excuse two more jurors. "The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge." Crim. R. 24 (E). "If the trial court erroneously overrules a challenge for cause, the error is prejudicial only if the accused eliminates the challenged venireman with a peremptory challenge and exhausts his peremptory challenges before the full jury is seated." *State v. Tyler,* 50 Ohio St.3d 24, 30-31, 553 N.E.2d 576 (1990), citing *State v. Eaton,* 19 Ohio St.2d 145, 249 N.E.2d 897 (1969), paragraph one of the syllabus.

{¶ 17} In the case before us, the record supports the conclusion that after Hofacker's challenges for cause were denied, he had the opportunity to, but did not excuse those two jurors through his remaining peremptory challenges. "It logically follows from this that the failure to eliminate a contested venireman with a peremptory challenge would render any error in overruling a challenge for cause as non-prejudicial and, thus, not reversible." *State v. Wolfe*, 4th Dist. Gallia No. 95CA04, 1996 WL 344092, *3 (June 17, 1996).

{¶ 18} The First Assignment of Error is overruled.

**V. Hofacker Was Not Prejudiced by Counsel's Failure to File a Motion to Suppress**

{¶ 19} Hofacker's Second Assignment of Error asserts as follows:

> MR. HOFACKER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶ 20}** "[T]he failure to file a motion to suppress does not necessarily constitute ineffective assistance of counsel." *State v. Layne,* 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 46, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (1999). It is only considered ineffective assistance of counsel when the record demonstrates that the motion to suppress would have been successful if made. *State v. Resendiz,* 12th Dist. Preble No. CA2009-04-012, 2009-Ohio-6177, ¶ 29, citing *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11. The court in *Resendiz* presumed that trial counsel was effective if he could have reasonably decided that filing a suppression motion would be a futile act, even if there is some evidence in the record to support a motion. *Resendiz* at ¶ 29. *See also State v. Conkright*, 6th Dist. Lucas No. L-06-1107, 2007-Ohio-5315, ¶ 50.

**{¶ 21}** "The Sixth Amendment does not require counsel to pursue a motion to suppress in every case." *State v. Bell*, 11th Dist. Lake No. 2015-L-017, 2015-Ohio-4775, ¶ 48, citing *State v. Jefferson*, 9th Dist. Summit No. 20156, 2001 WL 276343 (Mar. 21, 2001). "However, the failure to file a motion to suppress can constitute ineffective assistance of counsel if the motion implicates matters critical to the defense and if the failure results in prejudice." *Id*.

**{¶ 22}** "Where the basis of an ineffective assistance of counsel claim is counsel's failure to file a motion to suppress evidence, the defendant making that claim must prove that the basis of the suggested suppression claim is meritorious." *In re D.D.*, 2d Dist. Montgomery No. 22740, 2009-Ohio-808, ¶ 3, citing *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *State v. Pillow,* 2d Dist. Greene No. 07CA95, 2008-Ohio-6046.

{¶ 23} In the case before us, the basis of a motion to suppress would have been the procedurally defective process used to identify the offender. "Due process may require a court to suppress eyewitness testimony when the identification results from an unduly suggestive identification procedure." *State v. Adams*, Slip Opinion No. 2015-Ohio-3954, ¶ 208, citing *Foster v. California,* 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). "A lineup is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection." *Id.*, citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir.2001).

{¶ 24} "When a witness who identifies a defendant has been confronted with a live or photographic lineup of suspects, due process requires the court to suppress evidence of the witness's identification of the defendant if the confrontation was unduly suggestive of the defendant's guilt and the witness's identification of the defendant was unreliable under the totality of the circumstances." *In re D.D.,* 2d Dist. Montgomery No. 22740, 2009-Ohio-808, ¶ 4, citing *State v. Waddy*, 63 Ohio St.3d 424, 588 N.E.2d 819 (1992); *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001). "In applying the totality of the circumstances test the court must consider (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *Id.*, citing *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "The *Biggers* standards look to the reliability of the identification itself instead of the suggestive nature of the procedures that produced the identification. Nevertheless, '[a]gainst these factors is to be weighed the corrupting effect

of the suggestive identification itself.'" *Id.* at ¶ 5, quoting *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

{¶ 25} Here, the photo identified by the victim was first identified by her neighbor, even though he admittedly did not see the face of the person in the victim's home, only saw him for about two seconds, observing only his back as he ran away from the house, in the dark. On the night of the incident, the neighbor could only describe the intruder as a man wearing dark pants and a dark shirt. The photo array shown to the victim included the same photo shown to the neighbor in the presence of the victim when he positively identified the photo as Hofacker. Although the victim was certain that the photo depicted the same person who attacked her, she knew that her neighbor had positively identified Hofacker from the same photo, she was not wearing her glasses, she believed the person to whom she had previously loaned money was named Jeff, not Randy, and before she saw the photo she had not given the police any physical description of her attacker. Based on the totality of the circumstances, it does appear that the methods employed were unduly suggestive and that the victim's identification of Hofacker was not otherwise reliable. "[D]ue process requires the court to suppress evidence of the witness's identification of the defendant if the confrontation was unduly suggestive of the defendant's guilt and the witness's identification of the defendant was unreliable under the totality of the circumstances." *In re D.D.*, 2d Dist. Montgomery No. 22740, 2009-Ohio-808, ¶ 4.

{¶ 26} Even if the victim's initial identification of Hofacker was tainted, the DNA evidence submitted at trial was overwhelming proof of his identity. It can be concluded that unless the DNA evidence was admitted, there was a substantial probability that a

conviction would not have been secured. Therefore, we must address whether the impropriety of the police conduct resulting in the tainted identification must also require the exclusion of the DNA evidence. The record does establish that Hofacker was initially identified based on the tainted photo identification process, which led to his arrest, and that his DNA sample was obtained at the time of his arrest. But for his arrest, the DNA analysis would not have been completed. When a DNA sample is obtained incident to an arrest, and the arrest warrant is issued on the basis of a constitutionally deficient photo identification process, the question arises as to what effect, if any, this constitutional violation has on evidence obtained as a result of that tainted identification process. The Supreme Court of Ohio has recognized that the suppression of evidence pursuant to the exclusionary rule applies only to those searches that are carried out in violation of an individual's constitutional rights. *State v. Wilmoth*, 22 Ohio St.3d 251, 262, 490 N.E.2d 1236 (1986), citing *Kettering v. Hollen,* 64 Ohio St.2d 232, 234-235, 416 N.E.2d 598 (1980).

**{¶ 27}** "[T]he 'fruit of the poisonous tree' doctrine, also known as the derivative evidence rule, does not require the exclusion of all evidence that might not have been discovered 'but for' the illegal actions of the police." *State v. Pearson,* 130 Ohio App.3d 577, 584, 720 N.E.2d 924 (3d Dist.1998), citing *Wong Sun v. United States*, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The rule only operates to exclude derivative evidence discovered as a result of a constitutional violation. *Id.*, citing *Wong Sun* at 484-486, 83 S.Ct. at 415-417, 9 L.Ed.2d at 452–454. Evidence obtained pursuant to an independent source unrelated to the constitutional violation is admissible. *Pearson* at 584.

**{¶ 28}** "The exclusionary rule operates to exclude evidence obtained by the

government in violation of the United States Constitution." *State v. Helton,* 160 Ohio App.3d 291, 2005-Ohio-1789, 826 N.E.2d 925, ¶ 14 (11th Dist.). "The purpose of this rule is to deter police misconduct." *Id.* "The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence that is subsequently discovered and derivative of that prior illegality." *State v. McLemore,* 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 20 (2d Dist.). Thus: "[t]he derivative-evidence rule, or fruit-of-the-poisonous-tree doctrine as it is widely known, requires suppression of evidence that was seized in a seemingly lawful manner but about which police learned because of a prior constitutional violation such as an illegal search or seizure." *Id.*

{¶ 29} The exclusionary rule is not a personal right or a means to redress constitutional injury; rather, it is used to deter future violations. *Davis v. United States,* 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Deterrence alone is insufficient to justify the exclusionary rule, because the benefits of deterrence must outweigh the costs of excluded evidence, such as "letting guilty and possibly dangerous defendants go free." *Herring v. United States,* 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). In keeping with this principle, the exclusionary rule generally applies where police exhibit " 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, * * * " but not "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Davis v. United States, supra,* 131 S.Ct. at 2427. If the police "conduct involves only simple, 'isolated' negligence, the deterrence rationale loses much of its force, and exclusion cannot 'pay its way.'" *Id.* at 2427-2428, citing *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). "[A]n assessment of the flagrancy

of the police misconduct constitutes an important step in the calculus." *Leon* at 911, 104 S.Ct. 3405.

{¶ 30} "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{¶ 31} In the case before us, the DNA evidence was obtained as a result of an arrest warrant and the warrant was supported by an affidavit, signed by a detective, outlining the results of his investigation, which involved more than the victim's identification of Hofacker. The affidavit also stated that Hofacker was identified as a suspect after being seen at the victim's home on two previous occasions, "scamming the victim out of money." "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Hofacker has not established that the affidavit for the arrest warrant contained misleading information that the officer knew or should have known was false except for his reckless disregard for the truth. Furthermore, Hofacker has failed to demonstrate that the police committed gross negligence, or acted in a deliberate manner, willfully disregarding

Hofacker's constitutional rights when obtaining a DNA sample from him at the time of his arrest. We conclude that although the police acted negligently by failing to follow established procedures to conduct a proper photo array identification, the DNA sample was obtained by means sufficiently independent to be purged of the primary taint. Without establishing that the motion to suppress would have been granted to exclude the DNA evidence, Hofacker has not established prejudice by his counsel's error in not filing a motion to suppress.

{¶ 32} Accordingly, Hofacker's Second Assignment of Error is overruled.

## VI. Conclusion

{¶ 33} Both of Hofacker's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

HALL, J., concurring:

I concur separately only to express my view that had a motion to suppress been filed, it is likely that it would not have been granted. The victim readily knew the offender by sight, just not by his correct name. The robbery was at least the third time Hofacker had been in the victim's house. In my view, even if the police had intentionally, rather than inadvertently, shown the single picture of Hofacker to the victim [a show-up rather than a lineup] there is nothing to indicate that the identification of the image of the person she knew was unreliable.

. . . . . . . . . .

Copies mailed to:

R. Kelly Ormsby
Deborah S. Quigley
Scott S. Davies
Hon. Jonathan P. Hein