DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Police stopped William Taylor after he left a house that police claim was a known drug house. Police stopped Mr. Taylor's van and, after obtaining his consent, searched it. They found what appeared to be a crack pipe and two small rocks of crack cocaine. A jury found Mr. Taylor guilty of possession of cocaine and drug paraphernalia. He has appealed, arguing that he was denied effective assistance of counsel because his lawyer failed to move to suppress the physical evidence. Mr. Taylor has argued specifically that the stop was illegal because it was not based on reasonable suspicion of criminal activity. This Court affirms because Mr. Taylor has not established a basis to suppress the evidence.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 2} In order to establish ineffective assistance of counsel, a defendant must demonstrate that his lawyer's performance was deficient and that he was prejudiced by that *Page 2 
deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). "To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"State v. Bradley, 42 Ohio St. 3d 136, 142 (1989) (quotingStrickland, 466 U.S. at 694).
 {¶ 3} Lawyers are not required to move for suppression of evidence in every case. State v. Madrigal, 87 Ohio St. 3d 378, 389 (2000) (quotingKimmelman v. Morrison, 477 U.S. 365, 384 (1986)). "However, the failure to file a motion to suppress which possibly could have been granted and implicated matters critical to the defense can constitute ineffective assistance of counsel, if such failure prejudices the defendant."State v. Pitts, 9th Dist. No. 20976, 2002-Ohio-6291, at ¶ 88 (citingState v. Garrett, 76 Ohio App. 3d 57, 63 (1991)). "[I]n order to demonstrate deficient performance, [the defendant] must establish that a basis existed to suppress [the evidence]." State v. Adams,103 Ohio St. 3d 508, 515 (2004) (citing State v. Tibbetts, 92 Ohio St. 3d 146, 165-66
(2001)).
 {¶ 4} A lawyer's deficient performance is prejudicial only if "there exists `a reasonable probability that absent [the lawyer's] error, the factfinder would have had a reasonable doubt respecting guilt.'"Madrigal, 87 Ohio St. 3d at 389 (quoting Strickland, 466 U.S. at 695). Therefore, even if the record reveals a valid basis for suppression of the evidence, failure to move for suppression will not be ineffective assistance of counsel unless there is also a reasonable probability that without the excluded evidence the defendant would have been acquitted.
 {¶ 5} In this case, the crack cocaine and the crack pipe found in the van were vital to the State's case. Without that evidence, there is a reasonable probability that Mr. Taylor would have *Page 3 
been acquitted. Thus, the question is whether Mr. Taylor has met his burden to prove that a basis existed to suppress the evidence. SeeState v. Brown, 115 Ohio St. 3d 55, 2007-Ohio-4837, at ¶ 65 (citingState v. Adams, 103 Ohio St. 3d 508, 2004-Ohio-5845, at ¶ 35)).
 INVESTIGATIVE DETENTION {¶ 6} Although generally police may not detain a person without probable cause to arrest, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22
(1968). An investigative detention, supported by an officer's reasonable suspicion of criminal activity, does not violate the Fourth Amendment.State v. Taylor, 9th Dist. No. 16686, 1994 WL 395616 at *2 (July 27, 1994).
 {¶ 7} Reasonable suspicion requires that the officer "point to specific, articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion." Id. (citingTerry v. Ohio, 392 U.S. 1, 21 (1968)). "In making a determination of reasonable suspicion, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." State v. Lungs, 2d Dist. No. 22704, 2008-Ohio-4928, at ¶ 17 (quoting State v. Taylor,106 Ohio App. 3d 741, 747-49 (1995)). The reasonableness of the officer's actions in making an investigatory stop must be evaluated in light of the totality of the circumstances. Taylor, 1994 WL 395616 at *2 (citing State v.Freeman, 64 Ohio St. 2d 291, paragraph one of the syllabus (1980)).
 THE STOP {¶ 8} On the night Mr. Taylor was arrested, Tim Givens, a patrol supervisor with the Akron Police Department, was on patrol and was watching the house at 386 East Crosier Street *Page 4 
in Akron. He testified that the area surrounding the house was the most active drug area in the half of Akron he was responsible for supervising. The house had been the cause of "[n]umerous complaints . . . [that it was] an active drug house" and "was [the] source of pretty much 90 percent of [Officer Givens's work] from May to September [2007]." According to Officer Givens, people were arrested "[g]oing to, coming from, . . . [and] loitering around [in] front [of that address]" for offenses involving mostly crack cocaine and prostitution. Officer Givens testified that he was familiar with the two male residents of the house, as well as with most of the frequent visitors.
 {¶ 9} Officer Givens testified that he first noticed Mr. Taylor walking up the front steps of the house. He did not recognize Mr. Taylor and noticed that he had parked his minivan around the corner from the house, despite a vacant parking lot beside the house and open space on the street in front. He ran the van's license plate and learned that it was registered to an out-of-town owner. According to the officer, Mr. Taylor walked back down the front steps of the house less than three minutes after he entered. As he returned to his minivan, Mr. Taylor appeared to look directly at the police cruiser. Officer Givens testified that he did a U-turn and came back down the street, "expecting to see [the van] just about pulling away from the curb," but it was gone. According to the officer, he had to race "down . . . [the] alley [where he saw] the minivan traveling at a high rate of speed . . . so [he] had to really accelerate to catch up to it."
 {¶ 10} Officer Givens testified that, before approaching the van, he saw the driver "bending forward messing with something in front of him . . . then . . . doing something on the passenger seat next to him. . . ." According to the officer, he asked Mr. Taylor for a driver's license and asked him to exit the vehicle. He then asked who Mr. Taylor knew at the Crosier Street house and asked about his business there. The officer told Mr. Taylor that he had seen *Page 5 
him "messing with something in the center of the car and again on the seat" and asked him for permission to search the car. According to the officer, Mr. Taylor denied "messing with" anything and consented to the search. The officer first looked on the passenger seat under some clothes and found what appeared to be crack cocaine in an ink pen that had apparently been altered to serve as a crack pipe. He then looked in the center console where he found another rock of crack cocaine.
 {¶ 11} According to Officer Givens, his training and experience as a police officer have taught him to be suspicious of drug trafficking when there is a lot of short term traffic to and from a target location. Given the many neighborhood reports regarding a drug house at this address and the officer's previous experience with arrests at that location, it is understandable that he would pay attention to Mr. Taylor's visit. Officer Givens did not recognize him, noticed that he went to the trouble of parking around the corner, and observed that he stayed in the house less than three minutes. Officer Givens testified that, after looking directly at his cruiser, Mr. Taylor took off at a high rate of speed down a nearby alley. Although each of these facts is not necessarily indicative of criminal activity, together they may well have created a reasonable suspicion of criminal activity justifying an investigative detention. According to the officer, just moments into the stop, Mr. Taylor gave consent to search the van.
 {¶ 12} Mr. Taylor has not carried his burden of showing that there was a basis to suppress the evidence obtained in the search of his van. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Drummond, 111 Ohio St. 3d 14, 2006-Ohio-5084, at ¶ 208 (quoting State v. Gibson, 69 Ohio App. 2d 91, 95 (1980)). Mr. Taylor's assignment of error is overruled. *Page 6 
 CONCLUSION {¶ 13} Mr. Taylor has failed to show that there was a basis for suppressing the evidence found in his van. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to appellant. *Page 1