[Cite as *State v. Griffin*, 2019-Ohio-37.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 28829 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SAMSON GRIFFIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2016-08-2868 |

DECISION AND JOURNAL ENTRY

Dated: January 9, 2019

TEODOSIO, Judge.

{¶1} Appellant, Samson Griffin, appeals from his burglary conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} The Blick Clinic operates dozens of residential group homes in the Akron area for individuals with developmental disabilities. Mr. Griffin previously worked for the Blick Clinic as a direct care staff member in 2013 and 2014, assisting residents with various issues in their homes. On August 15, 2016, a 42" Sanyo television was stolen from an autistic resident's room in the group home on Eastlawn Avenue in Akron.

{¶3} According to a father and son team who were painting the interior of the Eastlawn group home that day, they encountered Mr. Griffin inside of the home. They saw Mr. Griffin attempting to open a locked medicine cabinet in the kitchen, and Mr. Griffin told them he was "taking inventory." The son later went outside to retrieve a tool from his father's truck, and

when he re-entered the home he passed by Mr. Griffin, who was exiting the home with a large, flat-screen television under his arm. The two men exchanged pleasantries and Mr. Griffin left.

{¶4} According to the human resources director of the Blick Clinic, Mr. Griffin called the executive director of the Blick Clinic that same afternoon to say he heard that he was being accused of stealing a television, but the allegation was untrue. The executive director spoke with Mr. Griffin while on speakerphone, specifically so the human resources director could listen to and witness the conversation.

{¶5} Four separate thefts had occurred in Blick group homes around that time, and the police began an investigation. They discovered that Mr. Griffin had pawned five different televisions in the past several weeks, although they were unable to locate the stolen 42" Sanyo. The father-painter identified Mr. Griffin in a photo array as the man he saw at the Eastlawn home with 90 percent certainty, but the son was unable to make a positive identification in the photo array. A Snapchat video of Mr. Griffin was also introduced at trial, in which he is in a vehicle wearing clothes matching the description provided by the son, and in which a television can be seen in the back seat. GPS evidence also placed Mr. Griffin's phone in the vicinity of Eastlawn Avenue around the time of the theft, and cell phone records indicated that a call was made to National Jewelry and Pawn ("National") from Mr. Griffin's cell phone that morning. Mr. Griffin denied entering the group home on that day and denied stealing the television, and instead told police that he was with his wife that afternoon. His wife's employer testified and presented documentation as to Mr. Griffin's wife's work schedule that day.

{¶6} Additional evidence was introduced at trial that Mr. Griffin had visited another Blick Clinic group home on Winhurst Drive three days prior to the Eastlawn theft. According to a staff member who was working that day, Mr. Griffin arrived, introduced himself using a

different name, and asked to speak to a resident named Chris, but she informed him that no one by that name lived there. Mr. Griffin left, but returned shortly thereafter and asked to speak to a different resident named Kenny, who was in fact present in the home. After the staff member allowed Mr. Griffin to speak to Kenny, Mr. Griffin told the staff member that he was also supposed to be meeting Tonya there to "help her do something," but she informed him that Tonya no longer worked there. Mr. Griffin was sweating and he went downstairs alone to use the restroom—where additional doors to the house that could be unlocked from the inside were located—before he ultimately returned upstairs and left the home. Another resident who returned to the Winhurst home later that day discovered that his television had been stolen. According to the staff member, the name Mr. Griffin provided did not sit well with her and she believed that she already knew him through mutual friends. She later realized she had gone to middle school with Mr. Griffin's ex-wife, and she was friends with both Mr. Griffin and his ex-wife on Facebook.

{¶7} Mr. Griffin was indicted on one count of burglary, a felony of the second degree, for the incident at the Eastlawn home. He filed a motion to suppress the results of the pretrial identification, but withdrew his motion prior to a hearing. After a jury trial, Mr. Griffin was found guilty, and the trial court sentenced him to two years in prison.

{¶8} Mr. Griffin now appeals from his conviction and raises four assignments of error for this Court's review.

{¶9} For ease of analysis, we will consolidate and reorganize Mr. Griffin's assignments of error.

4

II.

**<u>ASSIGNMENT OF ERROR ONE</u>**

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE ADMISSION OF HEARSAY EVIDENCE.

**<u>ASSIGNMENT OF ERROR TWO</u>**

TRIAL COUNSEL'S FAILURE TO OBJECT TO THE ADMIISSION (SIC) OF EVIDENCE OF SAMSON'S PAWNING OF NUMEROUS TELEVISIONS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

**<u>ASSIGNMENT OF ERROR FOUR</u>**

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO MOVE TO SUPPRESS THE IDENTIFICATION OF SAMSON

{¶10} In his first and second assignments of error, Mr. Griffin argues that his trial counsel was ineffective for failing to object to the admission of testimony and the pawn shop's business records identifying Mr. Griffin as having pawned five televisions between June 28, 2016, and August 15, 2016, because (1) the evidence was hearsay, and (2) the probative value of the records was outweighed by their prejudicial effect. In his fourth assignment of error, Mr. Griffin argues that his trial counsel was ineffective for withdrawing his motion to suppress the photo array as unduly suggestive. We disagree with all three propositions.

{¶11} We first note that "in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Moreover, debatable trial tactics will not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient

performance prejudiced the defense. *Strickland* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

Hearsay and the Business Records Exception

{¶12} Mr. Griffin first argues that his trial counsel was ineffective for failing to object to the admission of testimony and records—demonstrating that Mr. Griffin had recently pawned five televisions—as hearsay because the proper foundation was not laid, as the witness testified regarding records that were retained but not produced by his business. *See Monroe v. Steen*, 9th Dist. Summit No. 24342, 2009-Ohio-5163, ¶ 14 ("A witness who merely receives and retains records produced by another business does not necessarily have a 'working knowledge of the specific record-keeping system that produced the document.'").

{¶13} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and is generally inadmissible unless it falls within a recognized exception. Evid.R. 801(C) and 802. Evid.R. 803(6) sets forth an exception to the hearsay rule for business records of regularly conducted activity:

> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10),

unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶14} The director of operations in Ohio for National Jewelry and Pawn ("National") testified as to his extensive training and experience within the pawn industry, including his distinction as one of only 48 people in the world who is "certified to say what's known as a professional pawnbroker, which is about 100 hours of certification * * * [from] operations to identification of items in pawnshops." His testimony established that it is the regular practice of the pawn business to require customers to provide photo identification, and all of the relevant information regarding their transaction is electronically recorded in the pawn shop's point-of-sale software and kept in the ordinary course of business. That same information is then automatically transferred into the LeadsOnline database, whereby law enforcement is afforded access to daily reports on all transactions. The director's testimony established that the specific records of Mr. Griffin's transactions—pawning five televisions at Pawn Brokers of America ("Pawn Brokers") between June 28, 2016, and August 15, 2016—were created and entered into the system by several different clerks who had actual knowledge of the individual transactions.

{¶15} Mr. Griffin's argument that the proper foundation was not laid because National retained but did not actually produce the records lacks merit.

> When laying a foundation, "the testifying witness must possess a working knowledge of the specific record-keeping system that produced the document." [*State v. Davis*, 62 Ohio St.3d 326, 342 (1991)].

> The witness whose testimony establishes the foundation for a business record need not have personal knowledge of the exact circumstances of preparation and production of the document. Evid.R. 803(6). However, the witness must "demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business."

> [*Keeva J. Kekst Architects, Inc. v. George Dev. Group*, 8th Dist. Cuyahoga No. 70835, 1997 WL 253171, \*5 (May 15, 1997), citing *WUPW TV-36 v. Direct Results Marketing, Inc.*, 70 Ohio App.3d 710, 714-715 (10th Dist.1990)].

*State v. Baker*, 9th Dist. Summit No. 21414, 2003-Ohio-4637, ¶ 10-11. Here, the director testified that National acquired the assets of Pawn Brokers in November of 2016 and re-opened the business at the same location, maintaining the same phone number, only now under the control of National. The director's testimony established his working knowledge of the point-of-sale software utilized by National and Pawn Brokers. Although the director did not physically conduct the pawn transactions with Mr. Griffin, and he did not specifically refer to himself as the "custodian" of the records, he was surely at least an "other qualified witness" within the meaning of Evid.R. 803(6), enabling him to lay a foundation establishing the evidence as business records. *See State v. Rich*, 2d Dist. Montgomery No. 27356, 2018-Ohio-1225, ¶ 18; *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 40 ("A 'qualified witness' for this purpose would be someone with 'enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.'").

{¶16} Defense counsel never objected at trial to the director's testimony or to the introduction of the business records. However, as a matter of law, the failure to object at trial may be justified as a trial tactic and thus does not sustain a claim of ineffective assistance of counsel. *State v. Miller*, 9th Dist. Summit No. 23240, 2007-Ohio-370, ¶ 10, citing *State v. Gumm*, 73 Ohio St.3d 413, 428 (1995). "Strategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts." *Id.*, citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). The record here indicates that the director's testimony laid a sufficient foundation for the admission of the business records into evidence, and counsel's decision not to object was conceivably a strategic trial tactic, as any objection on the basis of

hearsay may have been presumed futile by counsel. Even assuming arguendo that counsel should have objected to the director's testimony or the records, we would nonetheless conclude that the failure to do so did not affect the outcome of the trial in light of the overwhelming evidence introduced against Mr. Griffin in this case. *See State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 68, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 105 (finding no ineffective assistance of counsel where even if trial counsel objected and evidence was excluded, other evidence established facts giving rise to the defendant's conviction).

<u>Probative Value vs. Prejudicial Effect</u>

**{¶17}** Mr. Griffin also argues that his trial counsel was ineffective for failing to object to the admission of the pawn shop's business records because their prejudicial effect outweighed their probative value. He directs our attention specifically to the fact that the stolen 42" Sanyo was not among the five televisions pawned by Mr. Griffin between June 28, 2016, and August 15, 2016, and he claims that the evidence may confuse a jury into believing the pawned televisions were stolen.

**{¶18}** "'Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence *unfairly* prejudices a defendant.'" (Emphasis added.) *State v. Martin*, 9th Dist. Lorain No. 15CA010888, 2017-Ohio-2794, ¶ 23, quoting *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107. Relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "The Supreme Court has stated the 'relevant evidence, challenged as being outweighed by its prejudicial effects, should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect

to one opposing admission[.]'" *Martin* at ¶ 23, quoting *State v. Ellis*, 9th Dist. Summit No. 27013, 2014-Ohio-4186, ¶ 26, quoting *State v. Frazier*, 73 Ohio St.3d 323, 333 (1995).

**{¶19}** Evidence that Mr. Griffin pawned five different televisions in the weeks immediately preceding the theft at the Eastlawn home is certainly probative in a case involving the theft of a television. Mr. Griffin is correct in stating that the stolen 42" Sanyo was not among the five televisions he pawned. The evidence at trial demonstrated that only one of the televisions recently stolen from Blick homes—not the 42" Sanyo—could be traced with a serial number, and that serial number did not match any of the five televisions recently pawned by Mr. Griffin. Mr. Griffin contends that evidence of him pawning televisions could lead a jury to believe that the pawned televisions were stolen, but the evidence at trial simply indicated that insufficient information was available to identify the pawned televisions as stolen property. As such, Mr. Griffin has not demonstrated how the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. *See* Evid.R. 403(A).

**{¶20}** In viewing the evidence in a light most favorable to the State, while maximizing its probative value and minimizing its prejudicial effect, we cannot conclude that it unfairly prejudiced Mr. Griffin or that it confused or misled the jury. Once again, trial counsel's failure to object to this evidence may reasonably be justified as a trial tactic, which this Court will not second-guess. *See Miller*, 2007-Ohio-370, at ¶ 10. Moreover, even if we had concluded that counsel should have objected, his failure to object would not have prejudiced Mr. Griffin, as the State introduced a wealth of evidence supporting a conviction in this case. *See Jackson*, 2015-Ohio-2473, at ¶ 68.

## Withdrawal of the Motion to Suppress

{¶21} Mr. Griffin also argues that his trial counsel was ineffective for withdrawing his motion to suppress evidence obtained from the photo array. He claims the photo array was unduly suggestive, and the father's identification of Mr. Griffin was tainted because the father's boss showed him a photo of Mr. Griffin as a possible suspect in the theft one day prior to police administration of the photo array.

{¶22} Defense counsel is not required to file a motion to suppress in every case. *State v. Taylor*, 9th Dist. Summit No. 24054, 2008-Ohio-5238, ¶ 3. This Court has held that the decision to withdraw a motion to suppress constitutes a tactical decision by counsel and cannot be used to establish an ineffective assistance claim. *See*, *e.g.*, *State v. Liu*, 9th Dist. Summit No. 24112, 2008-Ohio-6793, ¶ 32. Moreover, the Supreme Court of Ohio has "rejected claims of ineffective counsel when counsel failed to file or withdrew a suppression motion when doing so was a tactical decision, there was no reasonable probability of success, or there was no prejudice to the defendant." *State v. Nields*, 93 Ohio St.3d 6, 34 (2001).

{¶23} The father-painter testified that his employer texted a photo of Mr. Griffin to both him and his son one day after the theft, and he confirmed that it was the same man he saw in the Eastlawn home on the day of the theft. Detective Russell Bassett administered a photo array on the following day at one of the painters' job sites. Detective Bassett testified as to his role as the "blind administrator" of the photo array as well as the procedures he employed in administering the photo array. The photo array consisted of six tabbed photos in a single folder and the painters were each asked, individually, to look at each of the six photos in succession. They were permitted to go through the array a second time, but not a third time. The father identified a photo of Mr. Griffin in the array as the man he saw in the Eastlawn home on the day of the

theft with 90 percent certainty. The father testified that the photo of Mr. Griffin in the array was different than the one his boss sent him, as it was much grainier, Mr. Griffin's face was a little fuller, and his facial hair may have been different. The son was unable to make a positive identification from the photo array.

{¶24} Mr. Griffin's counsel filed a motion to suppress the evidence obtained from the photo arrays, arguing that (1) the Akron Police Department has not adopted specific procedures for conducting photo lineups in compliance with R.C. 2933.83, and (2) the photos contained within the array were unduly suggestive. Several months later, the trial court permitted defense counsel to withdraw from the case and appointed new counsel to represent Mr. Griffin. After several more months, new counsel withdrew the motion to suppress, and the case proceeded to trial.

{¶25} Mr. Griffin makes no argument to refute the presumption that counsel's decision to withdraw the motion was a tactical decision and fails to argue that the withdrawal resulted in any prejudice. Although he claims "a motion to suppress would have been successful if made," he provides no argument to support this assertion apart from a generalized reliance on persuasive authority from *State v. Hofacker*, 2d Dist. Darke No. 2015-CA-5, 2016-Ohio-519, the facts of which we determine to be distinguishable from Mr. Griffin's case.

{¶26} In *Hofacker*, an assault victim's neighbor never saw the suspect's face in the dark and could only identify him as a man wearing dark pants and a dark shirt, yet she positively identified him in a single photo provided to her by police. *Id.* at ¶ 25. The 90-year-old victim was not wearing her glasses at the time of the attack and had not given police any physical description of her attacker, but she was present when her neighbor positively identified the attacker in the photo. *Id.* The victim then viewed the same photo and also positively identified

the suspect. *Id.* The Court determined that "the methods employed were unduly suggestive and that the victim's identification of Hofacker was not otherwise reliable." *Id.* Unlike in *Hofacker*, both painters saw and even spoke to Mr. Griffin for several minutes in the Eastlawn home. When sent a picture of Mr. Griffin on the following day, they both confirmed that he was the man they had spoken to in the home. When police later administered the photo array, the father was able to identify Mr. Griffin with 90 percent certainly while the son was unable to make a positive identification.

{¶27} "Due process may require a court to suppress eyewitness testimony when the identification results from an unduly suggestive identification procedure. "A lineup is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 208. However, Mr. Griffin is not challenging the photo array itself or the actions of police in administering the array. Instead, he specifically takes issue with the father being shown a picture of Mr. Griffin by his employer a day before the administration of the photo array and argues that "[t]his surely would have had a corrupting effect on his identification." "When the questionable circumstances of an identification procedure are not due to state action, the reliability of the identification is a question going to the weight of the testimony, not its admissibility." *Id.* at ¶ 209. Consequently, as Mr. Griffin is not challenging the actions of the police, he has not demonstrated a reasonable probability that the motion to suppress on the basis of an unduly suggestive photo lineup would have been successful. Therefore, we cannot conclude that Mr. Griffin's trial counsel was ineffective for withdrawing the motion.

**{¶28}** For the reasons set forth above, we conclude that Mr. Griffin has not demonstrated that his trial counsel was ineffective, as he has failed to demonstrate deficient performance by counsel or any resulting prejudice. *See Strickland*, 466 U.S. at 687.

**{¶29}** Accordingly, Mr. Griffin's first, second, and fourth assignments of error are overruled.

### ASSIGNMENT OF ERROR THREE

THR (SIC) TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE PHOTO-LINEUP NONCOMPLIANCE AS REQUIRED BY REVISED CODE §2933.83(C)(3)

**{¶30}** In his third assignment of error, Mr. Griffin argues that the police failed to include four blank photos in four dummy folders to satisfy the "folder system" requirements of R.C. 2933.83(A)(6), and the trial court therefore committed plain error in failing to instruct the jury as to the photo array's noncompliance, pursuant to R.C. 2933.83(C)(3). We disagree.

**{¶31}** Because Mr. Griffin did not raise this issue at the trial court level, he has forfeited all but plain error. *See State v. Brantley*, 9th Dist. Summit No. 27466, 2016-Ohio-4680, ¶ 71. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "[The] error must be obvious and have a substantial adverse impact on the integrity of and the public's confidence in judicial proceedings." *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Elkins*, 9th Dist. Summit No. 19684, 2000 Ohio App. LEXIS 4670, *25 (Sept. 27, 2000). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶32}** R.C. 2933.83(B) requires law enforcement agencies conducting photo lineups to adopt specific procedures for conducting the lineups:

> Such procedures must provide, at minimum, the use of a "blind administrator" for the photo array, who does not know the identity of the suspect. The administration involves the use of a folder system *or a substantially similar system*. R.C. 2933.83(A)(2). The administrator conducting the lineup must make a written record of the lineup that includes all results obtained during the lineup, the names of all persons at the lineup, the date and time of the lineup, and the sources of the photographs used in the lineup. R.C. 2933.83(B)(4). The administrator is also required to inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know the identity of the suspect. R.C. 2933.83(B)(5).

(Emphasis added.) *State v. Potts*, 8th Dist. Cuyahoga No. 104482, 2017-Ohio-4435, ¶ 17. When evidence of failure to comply with either the provisions of R.C. 2933.83 or any adopted procedures for conducting lineups is presented at trial, "the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." R.C. 2933.83(C)(3).

**{¶33}** Mr. Griffin's argument that the police failed to comply with the "folder system" identification procedures set forth in R.C. 2933.83(A)(6) is misplaced. "The folder system provides for the inclusion of the suspect's photograph with five 'filler photographs,' and four 'blank photographs,' which are placed into ten empty folders and shuffled; the administrator accordingly does not know which folder the witness is viewing when the array is administered." *State v. Harmon*, 2d Dist. Montgomery No. 26883, 2017-Ohio-8106, ¶ 24. While the folder system is one particular method available to law enforcement for administering photo lineups, it is not required to be used for all photo lineups under R.C. 2933.83. *See In re T.H.*, 8th Dist. Cuyahoga No. 106433, 2018-Ohio-2300, ¶ 16; *State v. Patton*, 6th Dist. Lucas No. L-12-1356, 2015-Ohio-1866, ¶ 19; *Harmon* at ¶ 24. *See also* R.C. 2933.83(A)(2)-(3) (permitting photo lineups through the use of a folder system *or a substantially similar system*).

{¶34} Detective Bassett testified that he administered a photo array to the painters, but the record is devoid of any evidence that the folder system specifically outlined in R.C. 2933.83(A)(6) was ever utilized in this case. Mr. Griffin cannot argue noncompliance with the folder system requirements under R.C. 2933.83(A)(6) when that particular system was not required to be used and was, in fact, never used in this case. A review of Detective Bassett's testimony reveals that the photo array he administered in this case satisfied, at the very least, the requirement of a being a "substantially similar system" under R.C. 2933.83.

{¶35} Mr. Griffin has failed to show that the outcome of his trial would have been different had the trial court instructed the jury in accordance with R.C. 2933.83(C)(3), and this is not an exceptional circumstance where plain error must be noticed to prevent a manifest miscarriage of justice. As Detective Bassett's testimony established compliance with at least the minimum requirements of R.C. 2933.33(B), we conclude that the trial court did not commit plain error in failing to instruct the jury in accordance with R.C. 2933.83(C)(3).

{¶36} Mr. Griffin's third assignment of error is overruled.

### III.

{¶37} Mr. Griffin's assignments of error are all overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

KIRK A. MIDGAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.